OPINION OF THE COURT
Thomas A. Standee, J.
The plaintiffs, R.G. Egan Equipment, Inc., Polymag Equipment, Ltd., doing business as Polymag & Co., and Ronald G. Egan (collectively referred to as plaintiffs and/or Egan), submit a motion in limine seeking a ruling before trial admitting two letters dated June 7, 1994 and June 22, 1994 from Eileen Donadío to attorney Robert Bird into evidence at trial for the truth of the matters contained therein and as evidence of the declarant’s state of mind, and a ruling permitting attorney Bird’s testimony about same.
The defendants, Polymag Tek, Inc., Frank Corrado, Gary Larsen, Ronald Sweet, and James Fischer (collectively referred to as defendants and/or Polymag Tek), move for an order in limine to preclude plaintiffs[7] introduction of evidence at trial; and in the alternative granting such other and further relief as is just and equitable. The defendants seek to preclude the introduction of the two letters from Eileen Donadío to attorney Robert Bird.
The motion in limine of the plaintiffs, Egan, for a ruling admitting the June 7, 1994 and June 22, 1994 letters of Eileen Donadío, on behalf of Polymag & Co. of Massachusetts, to attorney Robert Bird into evidence at trial, and permitting testimony from attorney Bird regarding such letters is denied. The plaintiffs assert a variety of grounds in support of their request. None of these grounds support the relief requested. The defendants Polymag Tek’s motion in limine to preclude the introduction of the June 7, 1994 and June 22, 1994 letters of Eileen Donadío is granted.
Facts
A. Procedural Background
Egan commenced this lawsuit in 1996 seeking, among other things, relief for trade name infringement and unfair competition by Polymag Tek. There have been numerous motions and applications to the court resolving specific issues. By order of September 7, 1999 this court determined rights of the parties to certain patents, dismissed Egan’s fifth cause of action in the complaint for a declaratory judgment, and denied Polymag *282 Tek’s motion for summary judgment or dismissal of the plaintiffs’ fourth cause of action for trade name infringement.
Thereafter Polymag Tek submitted a motion for renewal of their prior motion for summary judgment and upon renewal sought dismissal of Egan’s fourth cause of action for trade name infringement and continuing acts of unfair competition.[1] Egan’s claim is based upon the defendants’ use of the name “Polymag” in its company name “Polymag Tek, Inc.” In addition, Polymag Tek requested summary judgment on their fifth counterclaim requesting declaratory and injunctive relief barring Egan from using the trade name “Polymag.” By order of this court dated November 30, 2000 the defendants, Polymag Tek, were granted summary judgment dismissing the fourth cause of action in plaintiffs’ complaint and a declaratory judgment in its favor regarding use of the trade name “Polymag.”
Upon appeal by the plaintiffs, Egan, the Appellate Division, Fourth Department, modified this November 30, 2000 order. The Appellate Division decision of December 21, 2001 denied Polymag Tek’s motion for declaratory judgment and injunctive relief and reinstated the fourth cause of action in plaintiffs’ complaint for trade name infringement and unfair competition. The basis for this modification was that plaintiffs, Egan, raised an issue of fact as to whether the estate of Robert Donadío had abandoned the trade name.
There has been extensive discovery. A note of issue has been filed a number of times. Each note of issue was stricken because discovery, in one form or another, was not complete. A new note of issue was filed on May 24, 2002. After a conference with the court on June 12, 2002 the parties were instructed to prepare and file their motions in limine for determination on admissibility of evidence at trial.
B. Historical Background
Robert Donadío, a nonparty to this action, operated a business known as “Polymag & Co.” in Massachusetts starting in 1987 (herein referred to as Massachusetts Polymag & Co.). The plaintiff, Ronald G. Egan, had a business relationship with Polymag & Co.[2] In 1992 Ronald G. Egan left the business relationship with Massachusetts Polymag & Co. Shortly thereaf *283 ter, on December 22, 1992, Egan filed a certificate of incorporation in New York State for a company named Polymag Equipment, Ltd., with a corporate doing business as Polymag and Company. At the same time Ronald Egan filed a certificate of incorporation in New York State for Egan Equipment, Inc., which was amended to be R.G. Egan Equipment, Inc. He then operated his business using the R.G. Egan Equipment, Inc. name in direct competition with Massachusetts Polymag & Co.
The defendants named individually in this lawsuit were independent contractors who performed work and services for Massachusetts Polymag & Co. The individual defendants continued to perform services for Massachusetts Polymag & Co. after the untimely death of Robert Donadío in November 1993, to assist in completing outstanding work. Eileen Donadío as the executrix of the estate of Robert Donadío had the individual defendants complete the outstanding contracts of Polymag & Co. through May 1994. During this same time period, in December 1993 Eileen Donadío incorporated a business under the name Donadío Research & Engineering, Inc. which would perform the consulting and services portion of the business previously conducted by Massachusetts Polymag & Co.
In January 1994, while still performing services for Massachusetts Polymag & Co., the individual defendants incorporated Polymag Tek, Inc. There was no objection by Eileen Donadío to the use of this name. There was a meeting in February 1994 among the individual defendants, Eileen Donadío, and others involved previously in Polymag & Co. and now involved in Donadío Research & Engineering, Inc., to discuss the future of Massachusetts Polymag & Co. business. After this meeting Donadío Research & Engineering, Inc. sent out a letter to the existing customers of Massachusetts Polymag & Co. advising the following:
“[T]he company you may have know [sic] as Polymag & Co.[3] has formally separated into two divisions known respectively as Donadío Research & Engineering and Polymag Tek. Donadío Research & Engineering will be a consulting, sales and service company while Polymag Tek will be an equipment company. As far as you are concerned, the change will be transparent.” (Donadío Research & Engineering letter of Mar. 28, 1994 from William *284 Y. Cheung, vice-president Research & Engineering [both of these companies serviced the customers of Massachusetts Polymag & Co.].)
Thereafter Eileen Donadío sent two letters, dated June 7, 1994 and June 22, 1994, on Massachusetts Polymag & Co. letterhead to Robert Bird, an attorney retained to submit patents for Massachusetts Polymag & Co. The admissibility of these letters are at issue in the current motions.
Various lawsuits were commenced between Robert Donadío, Ronald G. Egan, and the estate of Donadío alleging rights to certain chattels, asserting rights as a partnership, and seeking an accounting. All of these claims were resolved by a settlement agreement dated December 14, 1995 between Ronald G. Egan and the estate of Robert Donadío. This settlement agreement assigns and transfers from the estate of Donadío to Ronald G. Egan any right, title and interest to the name “Polymag,” “Polymag & Company,” and “Polymag & Co.” This conveyance specifically states the following:
“1 (b) (1). * * * Egan is aware that others may be using the name ‘Polymag’ over which Donadío has no control or authority and Donadío makes no representation concerning the use by third persons or entities.
“1 (b) (2). This conveyance is made without warranty or representation as to any right, title or interests that the Estate of Robert Donadío may have in such names.”
After such settlement agreement in December 1995, the plaintiffs, Egan, never operated their businesses using the business name “Polymag.” In addition, since June 1994, the estate of Robert Donadío never operated in the industry using the name “Polymag & Co.” or “Polymag.”
From January 1994 to the present Polymag Tek, Inc. has operated in the industry, with the full knowledge of Eileen Donadío and the estate of Robert Donadío, using the name “Polymag.” In 1996 the plaintiffs, Egan, commenced this lawsuit against the defendants, Polymag Tek, alleging claims for trade name infringement and unfair competition by the defendants’ use of the name “Polymag.”
I. The Appellate Division Decision
The plaintiffs assert that the decision by the Appellate Division, Fourth Department, filed December 21, 2001 in this case, which appears to have considered the June 22, 1994 let *285 ter, implicitly ruled that the June 7, 1994 and June 22, 1994 letters of Eileen Donadío to attorney Robert Bird were not privileged. Plaintiffs claim that the Appellate Division decision is either res judicata or the law of the case on the admissibility of the letters.
That decision was from the appeal of the decision and order of Supreme Court dated November 30, 2000, which granted summary judgment to the defendants and issued a declaration on the use of the “Polymag” name. The Appellate Division decision states:
“[W]e conclude that plaintiffs raised an issue of fact whether the Estate of Robert Donadío (Estate) abandoned the trade name. In opposition to the motion, plaintiffs submitted evidence that Eileen Donadío, the executrix of the Estate, had attempted to sell the trade name to defendants for $20,000, which is evidence that the Estate had not abandoned the trade name.” (Egan Equip, v Polymag Tek, 289 AD2d 1052, 1053 [4th Dept 2001] [citations omitted].)
There was no determination by the lower court or the Appellate Division as to the admissibility at trial of the June 7, 1994 and June 22, 1994 letters of Eileen Donadío.
Summary judgment is a determination as to whether an issue of fact exists (CPLR 3212 [b]). The Court of Appeals has expressed the standard of review of evidence upon a motion for summary judgment versus admissibility of evidence at a trial.
“Rules of evidence should be guardedly and cautiously applied on an application for summary judgment, particularly where there are many exceptions to general rules and where the application of a rule of evidence or the exceptions thereto can best be determined upon evidence offered at a trial.” (Phillips v Kantor & Co., 31 NY2d 307, 311-312 [1972] [citation omitted].) Proof that may be barred by the rules of evidence at the time of trial may be considered in opposition to a motion for summary judgment to determine whether a question of fact exists. (Id. at 315 [Dead Man’s Statute]; Lopez v Town of Gates, 258 AD2d 961 [4th Dept 1999] [Dead Man’s Statute]; Raimondo v St. Andrew’s R.C. Church Socy. of Town of Tonawanda, 247 AD2d 875 [4th Dept 1998] [hearsay statement]; Krampen v Foster, 242 AD2d 913 [4th Dept 1997] [hearsay statement]; Lawrence v Mountain, 234 AD2d 974 [4th Dept 1996] [parol evidence].) This general principle reinforces the policy that summary judgment should be denied where there is any significant doubt whether there is a material, triable issue of fact. Any evidence submitted to defeat a motion for summary judg *286 ment that might raise an issue of fact is sufficient to warrant denial of the motion. Nevertheless, such evidence may or may not be admissible at the time of trial, when the court must apply the evidentiary rules (see Phillips at 315; Raimondo at 875; Lawrence at 976).
The Appellate Division, Fourth Department, in accordance with the general principles for assessing proof on a summary judgment motion, considered the June 22, 1994 letter of Eileen Donadío in support of plaintiffs opposition to the defendant’s motion for summary judgment. The decision does not address the admissibility of the letters at trial nor assess whether the attorney-client privilege of Eileen Donadío applies to the letters. Giving the plaintiff “every favorable inference which can be reasonably drawn from the evidence” presented to defeat the summary judgment motion, the Appellate Division determined that plaintiff raised an issue of fact requiring a trial (see Krampen at 914). This determination, based on evidence considered on a summary judgment motion, is not res judicata nor the law of the case on the admissibility of the June 1994 letters at trial or the application of the attorney-client privilege.
The plaintiffs’ motion for a ruling admitting the June 7 and June 22, 1994 letters into evidence at trial based on the Appellate Division decision is denied.
II. Ownership of the Attorney-Client Privilege
The plaintiff, Ronald Egan, asserts that he is entitled to the Donadío letters, that he can use them as evidence in the trial, and that he controls any attorney-client privilege attached to these letters. His argument is that he was a partner in Massachusetts Polymag & Co., that he never abandoned his ownership interest in this company or the name, that the settlement agreement resolved the partnership issue in his favor, and he controls the privilege which exists between the attorney and Massachusetts Polymag & Co. Thus, Egan asserts that because he owns the privilege as a partner of the entity he can waive it himself. In the alternative, Egan argues that pursuant to the terms of the settlement agreement he owns any privilege regarding confidential communications between Massachusetts Polymag & Co. and its attorney Robert Bird.
A. Claim of Ownership by Being a Partner
Egan asserted various lawsuits against Robert Donadío and the estate of Robert Donadío related to claims of being a partner in the business entity Massachusetts Polymag & Co. *287 In those suits, Egan claimed that he had a possessory interest in assets of a partnership and that he was entitled to a distribution of partnership assets. All such claims were denied by Donadío and his estate. These actions were never fully adjudicated in the courts but instead were resolved between Egan and Eileen Donadío, estate of Robert Donadío, by the settlement agreement of December 14, 1995.
In the agreement there was no admission or acknowledgment by either party of liability or of the existence of valid claims, rights, or causes of action. (Agreement [7].) There was never any determination or admission concerning Ronald Egan’s claims that he was a partner in Massachusetts Polymag & Co. In addition, Egan “released the Estate of Robert Donadío from any and all claims that he now has for an interest in the joint venture, partnership or business known as Polymag & Company or in any other joint venture, partnership and business that existed or may have existed with Robert Donadío.” (Agreement [d].) Based upon this release, whether Egan was a partner in Massachusetts Polymag & Company can never be legally adjudicated as between the proper parties. Egan asserts speculative, bald, self-serving, statements that he was a partner. However, there is no evidence submitted to support this conclusion. Further there is nothing submitted to show that the entity Massachusetts Polymag & Co. was a partnership. Whether Egan was a partner in Massachusetts Polymag & Co. cannot be decided in this, or any subsequent litigation.
Egan’s argument that he owns the attorney-client privilege between Massachusetts Polymag & Co. and Robert Bird based on his status as a partner must fail.
B. Transfer of Assets Does Not Include Privilege
In the settlement agreement Donadío transfers specific assets to Egan. She sells, assigns and transfers to Egan the patents owned by Robert Donadío, the estate of Robert Donadío or Polymag & Company, and assigns and transfers the name Polymag, Polymag & Company and Polymag & Co. and use of the name Polymag. These patents and name were both quitclaim conveyances of particular property. It has not been shown that there was a transfer of the ownership of the company or a transfer of all of the assets of the Massachusetts Polymag & Co. business.
The Court of Appeals has addressed the impact of transfer of the ownership or assets of a business on the attorney-client relationship of the entity:
*288 “When ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical consequences rather than the formalities of the particular transaction * * *
“[T]he mere transfer of assets with no attempt to continue the pre-existing operation generally does not transfer the attorney-client relationship.” (Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 133 [1996].)
This legal principle, that the practical consequences of the transaction must show that the pre-existing operation of a business entity is continued in order for the attorney-client relationship to transfer to the new owners of the business or the assets, is applicable here.[4]
In this case, Ronald Egan obtained through the settlement agreement the patents and “Polymag” name through a quitclaim conveyance without any warranty or representation as to who owned those assets.[5] The agreement does not assign or transfer the entire Massachusetts Polymag & Co. business, and it does not transfer ownership of the company.
At the time of the transfer of the patents and name by the settlement agreement, Egan was operating a business called R.G. Egan Equipment, Inc. which competed with Massachusetts Polymag & Co. Prior testimony of plaintiff establishes that after assets were transferred by the settlement agreement, Egan continued to operate his business using the name Egan Equipment or R.G. Egan Equipment on his marketing and sales literature, that his letterhead, calling cards, quotations for business, promotional materials and descriptive materials all used the name R.G. Egan Equipment, Inc., and that he never had any promotional or professional literature or business documents using or promoting the name Polymag & Company.[6] There is no evidence presented to show that Egan, upon the transfer of the Massachusetts Polymag & Co. assets *289 in December 1995, continued to operate this pre-existing Massachusetts Polymag & Co. business.
The practical consequences of the transfer of the patents and “Polymag” name to the plaintiff is that Egan obtained specific assets from Massachusetts Polymag & Company. There was no transfer of the ownership of Polymag & Co. by the agreement. The transfer of defined assets, with no showing that Egan attempted to continue the pre-existing operation of Polymag & Company but instead continued to operate his competing business as R.G. Egan Equipment, Inc., does not transfer the attorney-client relationship between Eileen Donadío, on behalf of Polymag & Company, and Robert Bird (see Tekni-Plex at 133).
The attorney-client relationship between Massachusetts Polymag & Co. and Robert Bird was not transferred to Ronald Egan by the transfer of specific assets under the settlement agreement. Egan has no right to ownership of the privilege based upon the transfer of assets from Massachusetts Polymag & Co.
III. Waiver of the Attorney-Client Privilege
The parties in this action argue at great length regarding whether the attorney-client privilege bars the two letters of June 1994 written by Eileen Donadío, on behalf of Massachusetts Polymag & Co., to the patent attorney, Robert Bird, from being admissible as evidence at trial. This court notes, however, that none of the parties in this action can assert the attorney-client privilege between Donadío/ Massachusetts Polymag & Co. and attorney Bird.[7] The privilege exists only between the client, Eileen Donadío, on behalf of Massachusetts Polymag & Co. and its attorney, Robert Bird.[8]
The attorney-client privilege protects “confidential communication made between the attorney or his or her employee and the client in the course of professional employment” (CPLR 4503 [a] [1]; see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377 [1991]).
“Unless the client waives the privilege, an attorney * * * or any person who obtains without the knowledge of the client ev *290 idence of a confidential communication made between the attorney * * * and the client in the course of professional employment, shall not disclose, or be allowed to disclose such communication, nor shall the client be compelled to disclose such communication, in any action * * (CPLR 4503 [a] [1].)
“Disclosure of a privileged document generally waives that privilege unless the client intended to retain the confidentiality of the printed document and took reasonable steps to prevent its disclosure” (Baliva v State Farm Mut. Auto. Ins. Co., 275 AD2d 1030, 1031 [4th Dept 2000]; see Kraus v Brandstetter, 185 AD2d 300, 301 [2d Dept 1992]; Blair Communications v Reliance Capital Group, 182 AD2d 578 [1st Dept 1992]).
Based on the statutes and case law, unless the client, Eileen Donadío, waives the attorney-client privilege between her and attorney Bird, the plaintiffs Egan are prohibited from disclosing or being allowed to disclose the confidential communications consisting of the two June 1994 letters between client and attorney. Plaintiffs allege that Eileen Donadío as owner of Massachusetts Polymag & Co. waived the attorney-client privilege through her own actions and by the terms of the settlement agreement.
A. Waiver of the Privilege by the Actions of Eileen Donadío
Eileen Donadío was deposed in Massachusetts pursuant to an open commission. Plaintiffs’ counsel questioned Mrs. Donadío concerning the June 7 and June 22, 1994 letters addressed to attorney Robert Bird. During the deposition there was an oral application by counsel to the court regarding Mrs. Donadio’s refusal to answer questions about these two June 1994 letters based on the attorney-client privilege. The court determined and advised that questions could be posed to explore whether the attorney-client privilege had been waived, but otherwise the privilege prohibited further questioning regarding these letters.
There is no testimony or proof elicited at that deposition of Mrs. Donadío to demonstrate that she waived the attorney-client privilege. She consistently exercised the attorney-client privilege to protect her confidential communications of June 1994 with counsel.
There is no showing that Eileen Donadío, the client in the attorney-client relationship, had any knowledge prior to the questioning at the deposition that the June 7 and June 22, 1994 letters to counsel had been disclosed to others. The record does not establish how the plaintiffs obtained possession of the confidential communications between Eileen Donadío, as owner *291 of Massachusetts Polymag & Co. and attorney Robert Bird.[9] The evidence demonstrates that the letters were not obtained from Eileen Donadío as owner of Massachusetts Polymag & Co. There is no evidence that Eileen Donadío disclosed the confidential communications to Egan or any other person.
The mere fact that the plaintiffs have obtained a copy of these letters does not abrogate the protections afforded by the attorney-client privilege. These letters, which are confidential communications, were obtained by counsel for plaintiffs without the knowledge of Eileen Donadío, the client of attorney Bird. Further there has been no showing that Eileen Donadío disclosed the documents to any third parties. Under these circumstances, counsel for the plaintiffs “shall not disclose, or be allowed to disclose such communication, * * * in any action * * *” (CPLR 4503 [a] [1]).
There is no showing by any of the proof submitted by plaintiffs that the actions of Eileen Donadío waived the privilege.
B. Waiver of the Privilege by Entering Into a Settlement Agreement
The plaintiffs assert that there was a waiver of the privilege by Donadío expressed in the settlement agreement between Ronald G. Egan and the estate of Robert Donadío, Eileen Donadío. Plaintiffs rely on the terms of the agreement which require Donadío to disclose any letters written to attorney Bird related to his activities as attorney on the patents for Massachusetts Polymag & Co. The terms of the agreement state that “Donadío will forward, if found, to Egan all copies of all letters in the possession of Donadío, or under the control of Donadío, referencing or reasonably pertaining to” patent work of attorney Robert Bird. The agreement also states that “Donadío is not in possession of such materials” (agreement 11CQ).
(i) The Documents Were Not Disclosed to Egan hy Donadío
Notwithstanding the terms of the settlement agreement, Donadío did not turn over to Egan the June 7 or June 22, 1994 letters.[10] Whether Donadío had an obligation to produce certain documents by virtue of an oral or written agreement is not a waiver of the attorney-client privilege.
*292 In addition, Donadío acted in a manner consistent with her intent to retain the confidentiality of the legal communications and took reasonable steps to prevent their disclosure to the plaintiff (see Baliva, 275 AD2d at 1031; Manufacturers & Traders Trust Co. v Servotronics, Inc., 132 AD2d 392, 399 [4th Dept 1987]). She did not provide Egan with the June 1994 letters. She did not authorize Egan, in the agreement or otherwise, to obtain documents directly from attorney Bird, and she immediately claimed privilege upon questioning at her deposition concerning the June 1994 letters.
Here, there is purportedly an agreement for Donadío, a client of attorney Bird, to turn over privileged letters to a third party, Egan. However, whether that agreement is enforceable against the client, Donadío, is not at issue.[11] It may be that the client, Donadío, has affirmative defenses to being forced under the terms of the settlement agreement to turn over the June 1994 letters to Egan, including arguments that Egan may not have performed his obligations under the agreement. We could also speculate that Donadío may, in fact, be in breach of the settlement agreement. In any event, any dispute between Donadío and Egan as to the enforceability of the terms of the disclosure portion of the agreement is not before this court.
The facts presented on this motion in limine are that Donadío did not disclose the June 1994 letters in question to Egan. The waiver of the privilege occurs only by the actual turning over of the documents to Egan under the settlement agreement or the disclosure of the letters by Donadío to a third party. Neither occurred here.
(ii) The Terms of the Settlement Agreement Did Not Waive the Attorney-Client Privilege
The plaintiffs argue in the alternative that the terms of the settlement agreement waive the attorney-client privilege. However, the settlement agreement is clear and unambiguous.
“[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing * * *” (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990] [citations omitted]; see R/S Assoc. v New *293 York Job Dev. Auth., 98 NY2d 29 [2002]).
The terms of the settlement agreement clearly do not contain a waiver of the attorney-client privilege of Donadío. Egan’s attempt to assert that a waiver of the privilege is what was intended is unfounded. This court cannot add a provision that is not set forth in the four corners of the document. The attorney-client privilege of Donadío, as owner of Massachusetts Polymag & Co., has not been waived in the settlement agreement and such a waiver cannot and will not be implied.
On the evidence presented, there was no waiver by Eileen Donadío of her attorney-client privilege as to the June 7, 1994 and June 22 , 1994 letters by her actions or by virtue of the settlement agreement.
IV. Hearsay Exceptions
The parties review the application of various hearsay exceptions and the rules that allow evidence to be admitted solely to establish the state of mind of the declarant. A ruling admitting the June 7 and June 22, 1994 letters of Eileen Donadío into evidence at trial for the truth of the matters contained therein and as evidence of the declarant’s state of mind is prohibited by the protections afforded confidential communications between an attorney and client pursuant to CPLR 4503 (a). Regardless of whether any of these exceptions might apply, the motion in limine of the plaintiffs based on the exceptions to the hearsay rules must be denied.
V. Conclusion
The decision of the Appellate Division, Fourth Department, on a summary judgment motion is not res judicata nor the law of the case on whether the June 1994 letters of Eileen Donadío are admissible at the time of trial nor determinative of the application of the attorney-client privilege on the admissibility of these letters. The plaintiffs’ motion for a ruling admitting the June 7 and June 22, 1994 letters into evidence at trial based on the Appellate Division decision is denied.
There is no evidence that plaintiff is the owner of the attorney-client privilege. Plaintiff fails to show that he was a partner in Massachusetts Polymag & Co. Further, the transfer of specific assets in the settlement agreement, with no attempt to continue the pre-existing operation of Massachusetts Polymag & Co., is insufficient to show ownership of the attorney-client privilege. The plaintiffs’ motion for a ruling admitting the letters in question at trial based on ownership of the attorney-client privilege is denied.
*294 The attorney-client privilege is between Eileen Donadío and attorney Robert Bird. Plaintiffs have not demonstrated any waiver of this privilege by the actions of Eileen Donadío nor by the terms of the settlement agreement between Egan and Donadío. The plaintiffs’ motion for a ruling admitting the letters in question at trial based on a waiver of the attorney-client privilege is denied.
The application by the plaintiffs, R.G. Egan Equipment, Inc., Polymag Equipment, Ltd., doing business as Polymag & Co., and Ronald G. Egan, for a ruling before trial admitting two letters dated June 7, 1994 and June 22, 1994 from Eileen Donadío to attorney Robert Bird into evidence at trial for the truth of the matters contained therein and as evidence of the declarant’s state of mind is denied.
The defendants Polymag Tek, Inc., Frank Corrado, Gary Larsen, Ronald Sweet and James Fischer’s motion for an order in limine to preclude plaintiffs’ introduction of evidence, consisting of June 7, 1994 and June 22, 1994 letters from Eileen Donadío to attorney Robert Bird, at trial is granted.

. Due to the prior orders of this court, the fourth cause of action was the only remaining claim in the plaintiffs’ complaint.

. The nature of this relationship between Egan and Massachusetts Polymag & Co. is unclear. Litigation between the parties concerning whether Egan was a partner was resolved by an agreement that leaves the relationship undefined and bars any future action concerning the issue.

3. Referred to in this decision as Massachusetts Polymag & Co.

. These general principles are set forth by the Court of Appeals in the factual circumstances of a transfer of a corporate entity. Such legal analysis is similarly applicable to the transfer of ownership or transfer of assets of a partnership.

. The agreement specifically states in the clauses transferring the “Polymag” name that “Egan is aware that others may be using the name ‘Polymag’ over which Donadío has no control or authority and Donadío makes no representation concerning the use by third persons or entities.”

. This 1996 deposition testimony is set forth in exhibit H to the affirmation of Gerald Dibble, dated July 26, 2002, at page 10 of the decision and order dated November 30, 2000.

. As discussed above, Egan’s claims of ownership are unsupported by the evidence.

. Prior to this motion it has been determined by this court that Eileen Donadío, as owner of Massachusetts Polymag & Co., properly exercised the attorney-client privilege at the time of her deposition when plaintiffs’ counsel asked questions about the two June 1994 letters to attorney Robert Bird regarding business issues of the Massachusetts Polymag & Co. This determination was not appealed.

. Egan previously sued attorney Bird and the letters may have been discovered during that lawsuit.

. There is no evidence from plaintiffs, or from deposition testimony of Donadío exploring her waiver of the attorney-client privilege, that she had in her possession or under her control at any time following the settlement agreement, the June 7 and June 22, 1994 letters at issue.

. The issue of enforceability of the underlying agreement is not before this court and cannot be decided in this action.