# United States Court of Appeals for the Federal Circuit

---

**IN RE MSTG, INC.,**
*Petitioner.*

---

Miscellaneous Docket No. 996

---

On Petition for Writ of Mandamus to the United States District Court for the Northern District of Illinois in case no. 08-CV-7411, Judge Edmond E. Chang.

---

## ON PETITION FOR WRIT OF MANDAMUS

---

CHRISTOPHER J. LEE, Niro, Haller & Niro, of Chicago, Illinois, filed a petition for writ of mandamus and motion to stay for petitioner-movant.

DAVID T. PRITIKIN, Sidley Austin LLP, of Chicago, Illinois, filed a response for respondent AT&T Mobility LLC. With him on the response were LISA A. SCHNEIDER and BENEDICT F. FREY. Of counsel was ROBERT N. HOCHMAN.

---

Before RADER, *Chief Judge*, DYK and MOORE, *Circuit Judges*.

DYK, *Circuit Judge*.

# O R D E R

This petition arises out of an order of the United States District Court for the Northern District of Illinois compelling MSTG, Inc. ("MSTG") to produce documents related to license negotiation discussions between MSTG and six other companies, including previous defendants in this suit. We are asked to decide first, as a matter of first impression, whether such communications related to reasonable royalties and damages are protected from discovery based on a settlement negotiation privilege, and second, whether on the facts of this case the district court clearly abused its discretion by ordering their production. Because we conclude that the communications are not privileged, and that the district court did not clearly abuse its discretion, we deny the petition for writ of mandamus.

## BACKGROUND

In 2008, MSTG sued AT&T Mobility, LLC ("AT&T") and other cell phone service providers and mobile device manufacturers claiming infringement of U.S. Patent Nos. 5,920,551, 6,198,936, and 6,438,113 (collectively, the "patents-in-suit") covering third-generation ("3G") mobile telecommunications technologies. In 2009, MSTG initiated another lawsuit against other cell phone service providers and mobile device manufactures, also alleging infringement of the patents-in-suit. MSTG eventually settled with all defendants other than AT&T. As part of the settlement agreements, most defendants were granted licenses under the patents-in-suit as well as under other patents owned by MSTG. One defendant entered into an agreement giving it an option to license the patents at a predetermined rate. Additionally, during this time period, MSTG licensed the patents-in-suit to a technology

consortium, providing the consortium the right to grant a sublicense to its more than 50 members, a few of which were defendants in the pending litigation.

One of the issues in the litigation was the amount of a reasonable royalty if AT&T were found to infringe the patents-in-suit. License agreements can be pertinent to the calculation of a reasonable royalty. During discovery and in response to AT&T's document requests, MSTG produced six license agreements and the option agreement (collectively, the "settlement agreements"). AT&T then sought further discovery into the negotiations of the settlement agreements on the theory that those negotiations too could be pertinent to a reasonable royalty. MSTG objected on the ground that the negotiations were irrelevant to the reasonable royalty calculation. AT&T moved to compel the production of all "documents reflecting communications between MSTG or its attorneys, on the one hand, and either licensees or parties threatened with infringement by MSTG, on the other." Resp't's App. 270. In a January 20, 2011, order, a magistrate judge denied AT&T's motion to compel, finding that "AT&T has not carried its burden of showing why the settlement negotiations are relevant and discoverable under the standards of Rule 26." *MSTG, Inc. v. AT&T Mobility LLC* ("*Initial Order*"), No. 08-C-7411, slip op. at 28 (N.D. Ill. Jan. 20, 2011).

On January 10, 2011, after AT&T had submitted its motion to compel, MSTG served an expert report by Frank Bernatowicz on the issue of damages. This report was not submitted to the magistrate judge before he issued his January 20, 2011, order. In this report, Mr. Bernatowicz offered an opinion regarding a reasonable royalty for AT&T's alleged infringement of the patents-in-suit by "analyz[ing] royalty rates from potentially compa-

rable licenses, industry survey results, licensing policies of the 3GPP, and other published licensing rates for similar technology." Resp't's App. 144–45. Although the expert had "reviewed the[] six agreements and taken them into consideration in [his] reasonable royalty analysis," he did not find the royalty rates in those agreements to "be comparable to the hypothetical negotiation between MSTG and AT&T." Resp't's App. 138. This was so because most of the royalty agreements were "litigation related compromises," *id.*, and because they covered additional patents beyond the patents-in-suit. There was no showing that the expert had access to the negotiation documents, though he relied on deposition testimony of an MSTG executive that the agreements reflected litigation-related compromises.

AT&T sought reconsideration of the January 20, 2011, order on the grounds that the expert's discussion of the license agreements in his report constituted newly discovered evidence supporting discovery of the settlement negotiations. Granting the motion, the magistrate judge found that the negotiation documents "might contain information showing that the grounds Bernatowicz relied on to reach his conclusion are erroneous." *MSTG, Inc. v. AT&T Mobility LLC* ("*Reconsideration Order*"), No. 08-C-7411, slip op. at 4 (N.D. Ill. Mar. 8, 2011). The *Reconsideration Order* went on to explain that "[d]ocuments related to negotiations could shed light on why the parties reached their royalty agreements and could provide guidance on whether some or all of the licenses could be considered a basis for calculating a reasonable royalty between AT&T and MSTG." *Id.* at 5. MSTG was ordered to "produce documents reflecting communications, including settlement negotiations, it had with the six companies referenced in AT&T's motion." *Id.* at 7. The effect was to require production of the negotiation documents leading

up to the license agreements, the option agreement, and the agreement with the technology consortium.

The district court denied MSTG's objections and adopted the order. *MSTG, Inc. v. AT&T Mobility LLC* ("*Final Discovery Order*"), No. 08-C-7411, slip op. at 2 (N.D. Ill. June 27, 2011). In doing so, the district court agreed with the analysis of the magistrate judge. Additionally, it found that because MSTG's expert relied on the testimony of MSTG's executive regarding MSTG's "business reasons" for entering into the license agreements, it would be unfair for MSTG to "then shield those reasons from further examination." *Id.* On July 7, 2011, MSTG moved the district court to stay its June 27, 2011, order pending MSTG's petition for writ of mandamus. The district court denied MSTG's motion.

MSTG petitioned this court for a writ of mandamus to vacate the June 27, 2011, order and simultaneously moved for a stay of the discovery order pending our review of the petition. On July 29, 2011, we temporarily stayed the district court's discovery order pending our review. We have jurisdiction under 28 U.S.C. § 1295. *See In re Princo Corp.*, 478 F.3d 1345, 1351 (Fed. Cir. 2007).

DISCUSSION

I

"As to discovery matters, we have held that Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001). For example, in *In re Seagate Technology*, 497 F.3d 1360 (Fed.

Cir. 2007) (en banc), we held that "[b]ecause willful infringement and the scope of waiver [of attorney-client privilege and work-product immunity] accompanying the advice of counsel defense invoke substantive patent law, we apply the law of this circuit." *Id.* at 1367–68. Similarly, in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000), we held that "a determination of the applicability of the attorney-client privilege to [an] invention record clearly implicates, at the very least, the substantive patent issue of inequitable conduct. We therefore apply Federal Circuit law in determining whether the attorney-client privilege applies." *Id.* at 803–04. Just as we have applied our own law to issues of the scope of the attorney-client privilege and work product doctrine, we here apply our own law in determining whether a privilege or other discovery limitations protect disclosure of information related to reasonable royalties because that issue "implicates the jurisprudential responsibilities of this court within its exclusive jurisdiction," *Advanced Cardiovascular Sys., Inc.*, 265 F.3d at 1303, and has a significant bearing on the substantive issue of patent damages, *see In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006).

II

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a), this court has the authority to issue a writ of mandamus as "necessary or appropriate in aid of" our jurisdiction. *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1379 (Fed. Cir. 1983). The remedy of mandamus is available only in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power. *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). A party seeking a writ bears the burden of proving "that its right to issuance of the writ is clear and indisputable, . . . and that it

lacks adequate alternative means to obtain the relief sought." *In re Spalding Sports Worldwide*, 203 F.3d at 804 (alteration in original) (quoting *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996)).

It is generally inappropriate to review discovery orders by mandamus. However, mandamus may be appropriate where a discovery order "raises a novel and important question of power to compel discovery, or . . . reflects substantial uncertainty and confusion in the district courts." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3935.3 (2d ed. 1996) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 111 (1964) ("[T]he petition was properly before the court on . . . an issue of first impression that called for the construction and application of [a discovery rule] in a new context.")).

Thus, "mandamus may properly be used as a means of immediate appellate review of orders compelling the production of documents claimed to be protected by privilege or other interests in confidentiality." *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984). In such cases, "[w]ithout mandamus review, litigants might be compelled to disclose documents that are protected from disclosure by strong public policy." *Id.* at 592. Mandamus review is appropriate here as to the privilege issue. The issue of whether settlement negotiations are privileged is a matter of first impression before this court and one on which district courts are split.[1] The confidentiality of the settlement negotiations would be lost if review were denied until final judgment, and immediate resolution of this issue would avoid discovery that would undermine the claimed important public interests in protecting settlement discus-

---

[1]      *See infra* note 2.

sions from discovery. *See In re Seagate*, 497 F.3d at 1367; *In re Spalding Sports Worldwide*, 203 F.3d at 804; *see also In re United States*, 669 F.3d 1333, 1336-37 (Fed. Cir. 2012).

## III

There are two primary issues. First, MSTG argues that the license negotiations between it and its other licensees are protected by a settlement negotiation privilege. Second, MSTG argues that here, where the fully-integrated settlement agreements are already part of the record, the district court clearly abused its discretion by ordering the production of the underlying settlement negotiations.

## A.

MSTG urges us to invoke Rule 501 of the Federal Rules of Evidence to fashion a new privilege in patent cases that would prevent discovery of litigation settlement negotiations related to reasonable royalties and damages. In this respect, MSTG urges us to adopt the reasoning of the United States Court of Appeals for the Sixth Circuit in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979-83 (6th Cir. 2003), which appears to be the only one of our sister circuits to adopt such a privilege. The Seventh Circuit declined to adopt a settlement privilege in *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979).[2] Although parties to settlement may

---

[2] District courts are divided on whether a settlement negotiation privilege exists. *Compare Matsushita Electric Indus. Co. v. Mediatek, Inc.*, No. C-05-3148, 2007 WL 963975 (N.D. Cal. Mar. 30, 2007), *and In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F.

agree to keep settlement agreements confidential, MSTG does not contend that settlement agreements themselves would be covered by the proposed privilege.

The scope of discovery is governed by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides in relevant part:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Discovery of privileged material is not permissible. Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting "[t]he common law . . . in the light of reason and experience." "The Rule thus did not freeze the law governing the privileges of witnesses in federal trials at a particular point in our history, but rather directed federal courts to 'continue the evolutionary development of testimonial privileges.'" *Jaffee v. Redmond*, 518 U.S. 1, 8–9 (1996) (quoting *Trammel v. United States*, 445 U.S. 40, 47 (1980)). However, in adhering to the principle that "the public . . . has a right to every man's evidence," *United States v. Bryan*, 339 U.S. 323, 331 (1950), the Supreme Court has warned that evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth," *United States v.*

---

Supp. 2d 201 (D.D.C. 2005), *with California v. Kinder Morgan Energy Partners, L.P.*, No. 07-1883, 2010 WL 3988448 (S.D. Cal. Oct. 12, 2010), *and Software Tree, LLC v. Red Hat, Inc.*, No. 6:09-CV-097, 2010 WL 2788202 (E.D. Tex. June 24, 2010).

*Nixon*, 418 U.S. 683, 710 (1974).

The Supreme Court has identified several factors to be considered in assessing the propriety of defining a new privilege under Rule 501. These factors do not support recognition of a settlement privilege here.

First, "the policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." *Jaffee*, 518 U.S. at 12–13. In *Jaffee*, the Court found that the existence of a consensus among the states as to the existence of a psychotherapist privilege indicated that "reason and experience" supported recognition of the privilege. *Id.* at 13. Because of the broad consensus among states, "[d]enial of the federal privilege therefore would frustrate the purposes of the state legislation that was enacted to foster these confidential communications." *Id.* Here, however, there is no state consensus as to a settlement negotiation privilege. Although all states have apparently enacted a statutory mediation privilege, Jay M. Zitter, Annotation, *Construction and Application of State Mediation Privilege*, 32 A.L.R. 6th 285, § 2 (2008), the negotiations in this case did not result from mediation but from settlement negotiations between two sides without the assistance of a third-party mediator. We are not aware of any state that recognizes a settlement privilege outside the context of mediation. Thus, failure to recognize a federal settlement privilege will not "frustrate the purposes" of any state legislation as the failure to recognize a psychotherapist-patient privilege would have in *Jaffee*.

Second, in determining whether a new privilege should be adopted, courts look to whether Congress had considered that or related questions. *See Univ. of Pa. v.*

*EEOC*, 493 U.S. 182, 189 (1990). In adopting Rule 408 of the Federal Rules of Evidence, Congress directly addressed the admissibility of settlements and settlement negotiations but in doing so did not adopt a settlement privilege. Although the Supreme Court transmitted to Congress its proposed Rules of Evidence in 1973 pursuant to the Rules Enabling Act, Congress exercised its powers to suspend their implementation until expressly approved by an act of Congress. Act of Mar. 30, 1973, Pub. L. No. 93-12, 87 Stat. 9. After being revised by Congress, in 1975, the Federal Rules of Evidence were adopted as statutory law. Act of Jan. 2, 1975, Pub. L. No. 93-595, 88 Stat. 1926. As part of the new rules, Congress adopted Rule 408, which was devised for the basic purpose of advancing the goal of "promoting non-judicial settlement of disputes." H.R. Rep. No. 93-650, at 7 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7075, 7081. Rule 408, as currently amended,[3] provides that "[e]vidence of . . . (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim" is "not *admissible*—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a) (emphasis added). The rule specifically permits such evidence, however, for any other purpose, including, but not limited to, "proving a witness's bias or prejudice, negating

---

[3]    The Federal Rules of Evidence were amended, effective December 1, 2011. These amendments, however, were "intended to be stylistic only. There [was] no intent to change any result in any ruling on evidence admissibility." Fed. R. Evid. 408 advisory committee's note to 2011 amendments. Thus, we cite here to the amended version of the rules.

a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

The rule is clear by its text and history that it covers not only settlements and negotiations between the parties to the lawsuit, but also settlements and negotiations involving a third party. The advisory committee proposing the rule specifically stated:

> While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.

Fed. R. Evid. 408 advisory committee's note (1972 Proposed Rules). This understanding has been echoed by both courts, *see, e.g.*, *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247–48 (1st Cir. 1985), and commentators, *see, e.g.*, 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5304 (1st ed. 1992) (collecting and commenting on cases). Third party settlement negotiations are admissible, but only for purposes other than proving liability or the amount of a claim.

In enacting Rule 408, Congress did not take the additional step of protecting settlement negotiations from discovery. Adopting a settlement privilege would require us to go further than Congress thought necessary to promote the public good of settlement, or in other words, to strike the balance differently from the one Congress

has already adopted. This also suggests that it is not appropriate to create a new privilege for settlement discussions.

This situation is similar to that in *University of Pennsylvania*, 493 U.S. 182, involving a Title VII suit against a university claiming bias in a tenure decision. The university asserted that a new privilege should be recognized under Rule 501 covering confidential peer review materials, that is, confidential documents in a professor's tenure-review file such as evaluations made by other professors and documents reflecting the internal deliberations of the tenure committee. The Supreme Court rejected that privilege, placing significant emphasis on the fact that in extending Title VII to educational institutions and providing for broad EEOC subpoena powers, Congress did not see fit to create a privilege for peer review documents. In doing so, the Court weighed significantly the fact that "Congress has considered the relevant competing concerns but has not provided the privilege itself." *Id.* at 189. Indeed, "Congress undoubtedly was aware . . . of the potential burden that access to [peer review] material might create," *id.* at 191, but provided for confidentiality not through a privilege but by other means, such as criminal penalties for disclosure of confidential documents outside of an EEOC proceeding, *id.* at 192-93. Here too Congress's failure to adopt a settlement privilege supports our conclusion that no privilege for settlement negotiations should be recognized.

Third, in determining whether new privileges should be recognized, the Supreme Court has been influenced by the list of evidentiary privileges recommended by the Advisory Committee of the Judicial Conference in its proposed Federal Rules of Evidence. *See Jaffee*, 518 U.S. at 13-14; *United States v. Gillock*, 445 U.S. 360, 367-68

(1980). In *Jaffee*, the Court's decision was "reinforced by the fact that a psychotherapist privilege was among the nine specific privileges recommended by the Advisory Committee in its proposed privilege rules." 518 U.S. at 14. In *Gillock*, on the other hand, the Court's holding that Rule 501 did not include a state legislative privilege (speech and debate privilege) relied, in part, on the fact that no such privilege was included in the Advisory Committee's draft. 445 U.S. at 367-68. Here, a settlement negotiation privilege was not included among the nine specific privileges recommended by the Advisory Committee, thus cutting against MSTG's argument.

Fourth, "[t]he Supreme Court requires that a party seeking judicial recognition of a new evidentiary privilege under Rule 501 demonstrate . . . that the proposed privilege will effectively advance a public good." *In re Sealed Case*, 148 F.3d 1073, 1076 (D.C. Cir. 1998) (citing *Gillock*, 445 U.S. at 375). MSTG contends that settlement negotiations are analogous to the spousal, attorney-client, and psychotherapist privileges because they are all rooted in an "imperative need for confidence and trust," *Jaffee*, 518 U.S. at 10, and are designed to open up communication in which full and frank discussion serves a public good. MSTG concludes that this court must similarly recognize a privilege for settlement discussions. This need for confidence and trust alone, however, is an insufficient reason to create a new privilege. In other circumstances, the Supreme Court has rejected new privileges under Rule 501 even though recognition of a privilege would foster a relationship based on trust and confidence. *See, e.g., Univ. of Pa.*, 493 U.S. at 194-95 (rejecting privilege against disclosure of academic peer review materials). Also, while there is clearly an important public interest in favoring the compromise and settlement of disputes, disputes are routinely settled without the benefit of a

settlement privilege. It is thus clear that an across-the-board recognition of a broad settlement negotiation privilege is not necessary to achieve settlement.

Fifth, any settlement privilege would necessarily have numerous exceptions. Rule 408 itself contemplates a host of scenarios under which documents related to settlement negotiations would be admissible for purposes other than "prov[ing] or disprov[ing] the validity or amount of a disputed claim or [] impeach[ing] by a prior inconsistent statement or a contradiction." For example, settlement negotiation evidence would be admissible where the settlement itself or its interpretation is at issue or where evidence of the ingredients of the settlement might be relevant to an issue of double recovery. *See, e.g., Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 63–64 (1st Cir. 2011) (concluding the district court erred in not considering a settlement agreement in connection with a motion to offset damages); *Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir. 1987) (holding that testimony of settlement negotiations was admissible to "prove the terms of the agreement itself"); *see also* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.08[5] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997) ("If the settlement negotiations and terms explain and are a part of another dispute, they must often be admitted if the trier is to understand the case."). Documents related to settlement negotiations would typically be relevant and discoverable to the extent that such evidence would be admissible under Rule 408. Thus, a privilege for settlement negotiations would necessarily be subject to numerous exceptions. The existence of such exceptions would distract from the effectiveness, clarity, and certainty of the privilege. "An uncertain privilege . . . is little better than no privilege at all." *Jaffee*, 518 U.S. at 18 (quoting *Upjohn Co. v. United*

*States*, 449 U.S. 383, 393 (1981)).

Finally, to the extent we need to protect the sanctity of settlement discussions and promote the compromise and settlement of dispute, there are other effective methods to limit the scope of discovery to achieve those ends—primarily Rule 26 of the Federal Rules of Civil Procedure. In general, the Federal Rules of Civil Procedure promote a "broad and liberal" policy of discovery "for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501, 507 (1947). Discovery is not unlimited, though, under Rule 26. Courts are required to "limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

The Supreme Court has instructed us that the federal courts "should not hesitate to exercise appropriate control over the discovery process" to "prevent abuse." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Under Rule 26, trial courts can grant motions for protective orders to restrict the use of information solely for purposes of the litigation. *See Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 608 (2009) ("Moreover, protective orders are available to limit the spillover effects of disclosing sensitive information."). Indeed, in the present case the district court issued a protective order to help preserve confidentiality.

Similarly, the Advisory Committee's note to Rule 26 recognizes that the discovery rules "confer[] broad powers on the courts to regulate or prevent discovery even though

the materials sought are within the scope of 26(b)."  Fed. R. Civ. P. 26 advisory committee's note (1970 Amendment Subdivision (b)).  While typically settlement negotiations that are admissible under Federal Rule of Evidence 408[4] or disclosed to a party's expert[5] would be discoverable, the district court has discretion to limit discovery of material that is not itself admissible and that was not utilized by the opposing party to protect settlement confidentiality.  Even as to such admissible or disclosed material, some protections may be appropriate.  Significantly, citing the example of a tax return, the Advisory Committee proposing Rule 26 acknowledged that discovery could be limited where competing confidentiality interests are at stake.  *Id.*  The Advisory Committee recognized that although a party's tax return is generally held not privileged, an individual's "interests in privacy may call for a measure of extra protection."  *Id.* (citing *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556, 557 (S.D.N.Y. 1964) (holding in a Securities Act case that even though the plaintiff's tax return was relevant to show that certain tax savings by the plaintiff for investments that turned out to be fraudulent could be offset against any liability of the defendant, a party's income tax return should only be discoverable

---

[4]    We note here that we have not yet decided the extent to which evidence of settlement negotiations would be admissible under Rule 408.     *See generally ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010); *Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n*, 366 F.3d 1311, 1322 (Fed. Cir. 2004); *Snellman v. Ricoh Co.*, 862 F.2d 283, 289-90 (Fed. Cir. 1988); *Medtronic Inc. v. Intermedics, Inc.*, 799 F.2d 734, 741 (Fed. Cir. 1986); *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078-82 (Fed. Cir. 1983); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1556-57 (Fed. Cir. 1983).

[5]    *See In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001).

"where a litigant himself tenders an issue as to the amount of his income")). Under this authority, discovery in other areas has been limited because allowing broad discovery would undermine other important interests in confidentiality. *See, e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1176 (9th Cir. 2011) (identity of anonymous speaker); *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583, 598 (1st Cir. 1980) (identity of confidential sources); *Keyes v. Lenoir Rhyne Coll.*, 552 F.2d 579, 581 (4th Cir. 1977), *cert. denied* 434 U.S. 904 (1977) (peer review materials at universities); *Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961) (trade secrets).

We note that other courts have imposed heightened standards for discovery in order to protect confidential settlement discussions. In the context of confidential mediation communications, the Second Circuit has held that because "confidentiality in [mediation] proceedings promotes the free flow of information that may result in the settlement of a dispute," a party seeking discovery of confidential communications must make a heightened showing "demonstrat[ing] (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011) (internal quotation mark omitted). Many district courts also require heightened showings for discovery of settlement negotiations. *See, e.g.*, *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168, 2011 WL 5416334, at *8 (D.N.J. Nov. 7, 2011) (finding that party seeking discovery "failed to make a heightened, more particularized showing of relevance" (internal quotation mark omitted)); *Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 226–27 (D. Mass. 2003); *Young v. State Farm Mut. Auto. Ins. Co.*, 169

F.R.D. 72, 76 (S.D. W. Va. 1996); *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F. Supp. 1560, 1576 (D.N.M. 1994). *But see Vardon Golf Co. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 650-51 (N.D. Ill. 1994) (rejecting the approach of placing a burden upon the proponent of discovery to make some "particularized showing" of a likelihood that admissible evidence will be generated by discovery of the information). Because the issue is not before us, we reserve for another day the issue of what limits can appropriately be placed on discovery of settlement negotiations. But the existence of such authority, whatever its scope, strongly argues against the need for recognition of a privilege. In other words, the public policy goals argued to support a privilege can more appropriately be achieved by limiting the scope of discovery.

Therefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege. *See In re Gen. Motors*, 594 F.2d at 1124 n.20.

## B.

Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties. *See generally ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-73 (Fed. Cir. 2010). Here, the settlement agreements were in fact produced and MSTG does not argue that this production was inappropriate. However, MSTG challenges the discovery order on the grounds that the district court abused its discretion by ordering the production of negotiation documents underlying the settlement agreements.

The magistrate judge first denied discovery of the set-

tlement negotiations because the settlement agreements had already been produced and AT&T had not shown a need for discovery as to the underlying settlement negotiations. After MSTG's expert offered his opinion regarding a reasonable royalty for AT&T's alleged infringement, the magistrate judge reconsidered and ordered production of the negotiation documents "because they might contain information showing that the grounds [MSTG's expert] relied on to reach his conclusion are erroneous." *Reconsideration Order*, slip op. at 4. The district court agreed, and ordered production to permit AT&T "the ability to test the accuracy of [the expert's] opinions and assumption." *Final Discovery Order*, slip op. at 2.

While MSTG argues that its expert relied only on information within the four corners of the settlement agreements, *see Reconsideration Order*, slip op. at 3, AT&T points to specific opinions offered by the expert that go beyond the four corners of the agreements, *see id.* at 4. For example, the expert concluded that the rates in the settlement agreements were "discounted by at least 75%" because they were entered before any substantive litigation rulings such as claim construction or summary judgment. Resp't's App. 139. On this issue the agreements themselves did not support the opinion. Rather, the expert cited an MSTG executive as to MSTG's supposed reasons for entering into the agreements as well as other data. As a matter of fairness MSTG cannot at one and the same time have its expert rely on information about the settlement negotiations and deny discovery as to those same negotiations. *See In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1374-76 (Fed. Cir. 2001). Nor has MSTG attempted to show that the district court awarded overly broad discovery into the settlement negotiations, or that denial of discovery of the settlement negotiation documents was necessary here to encourage

settlement. Thus, the district court did not clearly abuse its discretion in ordering production of the settlement negotiation documents. *See In re Roche Molecular Sys., Inc.*, 516 F.3d 1003, 1004 (Fed. Cir. 2008) ("The remedy of mandamus is available only in extraordinary situations to correct a clear abuse of discretion . . . ."). MSTG's petition for writ of mandamus is thus denied.

Accordingly,

IT IS ORDERED THAT:

(1)  The petition for a writ of mandamus is denied.

(2)  All pending motions are moot.

FOR THE COURT


April 9, 2012                          /s/ Jan Horbaly
     Date                              Jan Horbaly
                                       Clerk