**In re CITY OF STOCKTON, CALIFORNIA, Debtor(s).**

Nos. 12–32118–C–9.

United States Bankruptcy Court, E.D. California.

July 13, 2012.

Marc A. Levinson (argued), Norman C. Hile, John W. Killeen, Orrick, Herrington & Sutcliffe LLP, Sacramento, CA, for debtor.

**OPINION ON MOTION FOR LEAVE TO INTRODUCE EVIDENCE RELATING TO NEUTRAL EVALUATION PROCESS UNDER CALIFORNIA GOVERNMENT CODE § 53760.3(q)**

CHRISTOPHER M. KLEIN, Chief Judge.

This case of first impression involves the boundaries, the interplay, and the common ground between federal law and state law in the context of the confidentiality requirement in California's new statute channeling a municipality through a neutral evaluation process before filing a chapter 9 case to adjust debts under the U.S. Bankruptcy Code.

Upon filing this chapter 9 case, the City of Stockton filed the instant motion invoking the part of California Government Code § 53760.3(q) that authorizes a bankruptcy judge to lift the shroud of confidentiality from the pre-filing neutral evaluation for the limited purpose of establishing the City's eligibility for chapter 9 relief. This court accepts the invitation only with respect to the one chapter 9 eligibility element for which state law provides the rule of decision and otherwise declines because state evidence law does not govern evidence in federal court on issues when federal law provides the rule of decision.

Nevertheless, federal policy encouraging settlement also favors preserving confidentiality of compromise discussions and permits federal trial judges to ration the disclosure of confidential settlement discussions on their own authority. Hence, this court will impose a confidentiality protective order and take an incremental approach to disclosure as there is no indi-

cation in the case as yet that detailed evidence of confidential discussions will be needed in order to determine chapter 9 eligibility.

*Facts*

The City of Stockton, California, filed this chapter 9 case on June 28, 2012, following the conclusion of the newly-enacted pre-filing neutral evaluation required by California Government Code § 53760 as a precondition for permitting a California municipality to. file a chapter 9 case.

The next day, the City filed this Emergency Motion For Leave To Introduce Evidence Relating To Neutral Evaluation Process Under Government Code § 53760.3(q) seeking permission to introduce evidence as to: (1) the number and length of meetings between the City and its creditors; (2) the identity of the participants at such meetings; (3) the types of issues discussed; (4) the financial and other information shared; (5) the offers exchanged and the discussions between the parties; and (6) the status of negotiations between the City and each interested party as of the petition date.

Oral argument was entertained in open court on July 6, 2012. This decision memorializes the ruling made from the bench at the end of that hearing.

*Analysis*

Context matters. Here, what is going on is the process of determining whether to enter an order for relief, which is the initial judicial task in every chapter 9 case. We begin with an inventory of the essential elements for chapter 9 eligibility and how one goes about determining them, before assessing the effect of Government Code § 53760 on this chapter 9 case.

I

Chapter 9 is peculiar in that the filing of a voluntary petition does not con-

stitute an order for relief. 11 U.S.C. § 921(d). Rather, the municipality must be prepared to litigate its way to an order for relief in its voluntary case by demonstrating its eligibility to be a chapter 9 debtor and establishing that it filed the petition in good faith. 11 U.S.C. §§ 109(c) & 921(c).

## A

■ Five essential elements for eligibility to be a chapter 9 debtor are set forth at 11 U.S.C. § 109(c), to which is appended a good faith filing requirement by 11 U.S.C. § 921(c). 2 Collier on Bankruptcy ¶ 109.04 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2011) ("Collier").

First, there must be a "municipality," which is defined as a "political subdivision or public agency or instrumentality of a State." 11 U.S.C. §§ 101.(40) & 109(c)(1); 2 Collier ¶ 109.04[3][a].

Second, the municipality must be specifically authorized, in its capacity as a municipality or by name, to be a debtor under chapter 9 by state law, or by a governmental officer or organization empowered by state law to authorize such entity to be a debtor under such chapter. 11 U.S.C. § 109(c)(2); 2 Collier ¶ 109.04[3][b].

Third, the municipality must be "insolvent," which is specially defined for chapter 9 purposes as "(i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due." 11 U.S.C. §§ 101(32)(C) & 109(c)(3); 2 Collier ¶ 109.04[3][c].

Fourth, the municipality must desire to effect a plan to adjust the debts it is generally not paying or unable to pay. 11

U.S.C. § 109(c)(4); 2 Collier ¶ 109.04[3][d].

Fifth, a creditor negotiation requirement may be satisfied by one of four alternatives. The municipality must have: (A) obtained the agreement of creditors holding at least a majority in amount of the claims of each class that it intends to impair under a chapter 9 plan; or (B) negotiated in good faith with creditors and have failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that it intends to impair under a chapter 9 plan; or (C) be unable to negotiate with creditors because such negotiation is impracticable; or (D) reasonably believe that a creditor may attempt to obtain a transfer that is avoidable as a preference. 11 U.S.C. § 109(c)(5); 2 Collier ¶ 109.04[3][e].

Here, the City relies on the good-faith negotiation prong at § 109(c)(5)(B) of the creditor negotiation requirement.

■ If the five essential elements are satisfied, then the court must order relief unless the debtor did not file the petition in good faith. Thus, this latter "good faith filing" element can be regarded as a sixth essential element for chapter 9 relief in the sense that relief will not be ordered if the case was not filed in good faith. *Compare* 11 U.S.C. § 921(c), *with id.* § 921(d).

## B

■ The burden of proof, at least as to the five § 109(c) elements, is on. the municipality as the proponent of voluntary relief.[1] *Int'l Assn. of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 289 (9th Cir. BAP 2009) ("*Vallejo*"); *In re Valley Health*

---

1. Given that the City is relying in this instance on the good-faith negotiation prong of § 109(c)(5)(B), debate about who has the good-faith filing burden under § 921(c) can

safely be left to another day as it seems improbable (but not impossible) that good-faith negotiations would precede a filing that is made not in good faith.

*Sys.*, 383 B.R. 156, 161 (Bankr.C.D.Cal. 2008) ("*Valley Health*"); *In re County of Orange,* 183 B.R. 594, 599 (Bankr.C.D.Cal. 1995) ("*Orange County*"); 2 COLLIER ¶ 109.04[2].

■ The quantum of proof, there being no contrary indication in statute or in controlling decisional law, is the familiar preponderance-of-evidence standard of basic civil litigation. Nothing suggests there should be a higher burden. This conclusion comports with the argument by the authors of the *Collier* treatise that the burden should be liberally applied in favor of granting relief. 2 COLLIER ¶ 109.04[3].

Clarifying that the quantum of the burden is preponderance of evidence matters in the present instance because the logic behind the breadth of the City's request to dispense with confidentiality of the pre-filing neutral evaluation appears to rest on the incorrect premise that the City will be subjected to some higher standard of proof than preponderance of evidence.

C

■ The procedure for resolving the eligibility question resembles ordinary federal civil litigation. The petition and supporting materials function as the equivalent of a complaint and objections to the petition as the answer. Material factual disputes will be resolved by way of trial.

Once the petition is filed, notice of commencement of the case must be published for three consecutive weeks in a newspaper of general circulation within the district and a newspaper of general circulation among bond dealers and bondholders. 11 U.S.C. § 923. One purpose of such notice is to alert parties in interest to the opportunity to "object" to the petition.

The court resolves objections to the petition by following a notice and hearing procedure. 11 U.S.C. §§ 921(c)-(d).

■ By process of elimination, the relevant procedure is the Rule 9014 "contested matter." Fed. R. Bankr.P. 9014. Although the notice-and-hearing requirement of § 921(c) puts the question of the order for relief into a litigation context, the Federal Rules of Civil Procedure do not directly specify a procedure for chapter 9 cases. Neither the contested petition provisions of Rules 1011 and 1018 nor the adversary proceeding rule apply in chapter 9. What remains is the Rule 9014 "contested matter" procedure.

Under Rule 9014, aside from the absence of formal pleadings, most of the adversary proceeding rules apply. Fed. R. Bankr.P. 9014(c). Testimony of witnesses in any disputed material factual issue in a contested matter must be taken in the same manner as testimony in an adversary proceeding—in other words, a fact-based contest in a contested matter is to be resolved by way of trial. Fed. R. Bankr.P. 9014(d).

■ As the petition and supporting documents function as a complaint to place before the court the allegations and factual basis for relief, it is appropriate that facts be alleged with respect to each essential element sufficient to make plausible the proposition that the City is entitled to an order for relief. In other words, at least a prima facie case needs to be stated.

Indeed, the City urges that its need to assert a plausible case as to each essential element for eligibility justifies dispensing with all of the confidentiality protecting the pre-filing neutral evaluation discussions. As will be explained, however, a more incremental approach is appropriate.

■ The actual nature and extent of the litigation and the increments of disclo-

sure will depend upon the issues that are actually joined by way of objection to the petition. If there are no objections, then the court will be entitled (but not required) to rely on the prima facie case as a basis for ordering relief. If there are objections, a trial will ensue, the complexion of which will depend upon the nature of the dispute and may trigger broader disclosure of pre-filing discussions.

## II

The state is the chapter 9 gatekeeper by virtue of § 109(c)(2). But that gatekeeping function ends once the. gate is opened and a chapter 9 case is filed.

### A

The gate is the requirement that a municipality is eligible to be a debtor in a chapter 9 case only if it is specifically authorized by state law, or by a governmental officer or organization empowered by state law to authorize the municipality to be a debtor under chapter 9. 11 U.S.C. § 109(c)(2).

**2.** The statute applies to any "local public entity," which is defined as:

(f) "Local public entity" means any county, city, district, public authority, public agency, or other entity, without limitation, that is a municipality as defined in Section 101(40) of Title 11 of the United States Code (bankruptcy), or that qualifies as a debtor under any other federal bankruptcy law applicable to local public entities. For purposes of this article, "local public entity" does not include a school district.

CAL. GOVT.CODE § 53760.1(g).

**3.** The basic authorization is:

A local public entity in this state may file a petition and exercise powers pursuant to applicable federal bankruptcy law if either of the following apply:

(a) The local public entity has participated in a neutral evaluation process pursuant to Section 53760.3.

(b) The local public entity declares a fiscal emergency and adopts a resolution by a

■ California has engineered the parameters of its gate in California Government Code § 53760, which authorizes any county, city, district, public authority, public agency, or entity that qualifies as a municipality under the Federal Bankruptcy Code, other than a school district,[2] to be a debtor under chapter 9 but recently imposed preconditions for which this case functions as the maiden voyage. The municipality must either engage in a neutral evaluation process for a specified period or its governing board must declare a fiscal emergency pursuant to specified procedures. CAL. GOVT.CODE § 53760.[3]

### B

■ If the neutral evaluation process concludes without having resolved all pending disputes with creditors, the municipality may file a chapter 9 petition. CAL. GOVT.CODE § 53760.3(u).[4]

■ The municipality and all interested parties participating in the neutral eval-

majority vote of the governing board pursuant to Section 53760.5.

CAL. GOVT.CODE § 53760, as amended by Assembly Bill 506, approved by Governor, October 9, 2011, effective January 1, 2012.

**4.** The statute provides:

(u) If the 60–day time period for neutral evaluation has expired, including any extension of the neutral evaluation past the initial 60–day time period pursuant to subdivision (r), and the neutral evaluation is complete with differences resolved, the neutral evaluation shall be concluded. If the neutral evaluation process does not resolve all pending disputes with creditors the local public entity may file a petition and exercise powers pursuant to applicable federal bankruptcy law if, in the opinion of the governing board of the local public entity, a bankruptcy filing is necessary.

CAL. GOVT.CODE § 53760.3(u).

uation process have a duty to negotiate in good faith. CAL. GOVT.CODE § 53760.3(*o* ).

■ The parties must maintain the confidentiality of the neutral evaluation process and "not disclose statements made, information disclosed, or documents prepared or produced, during the neutral evaluation process, at the conclusion of the neutral evaluation process," or during any bankruptcy proceeding except upon agreement of all parties or, for the limited purpose of determining chapter 9 eligibility under § 109(c), upon permission of the bankruptcy judge. CAL. GOVT.CODE § 53760.3(q).[5]

### III

The question becomes the extent to which the California confidentiality provision applies in the conduct of this chapter 9 case and, to the extent it does not apply, how to deal with matters warranting confidentiality.

### A

■ A chapter 9 case is, by definition, a federal proceeding in a federal court. One particular consequence is that the Federal Rules of Evidence apply to this bankruptcy case. *E.g.*, Fed.R.Evid. 1101(b).

With respect to privileges—and California's confidentiality requirement arguably in the nature of a privilege under Califor-

nia Evidence Code § 1119[6]—the controlling federal provision is Federal Rule of Evidence 501:

Rule 501. Privilege in General

The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute; or
- rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed.R.Evid. 501.

■ The rules on privilege apply to all stages of this chapter 9 case. Fed.R.Evid. 1101(c).

It follows that the confidentiality provision of California Government Code § 53760.3(q) apply only to the extent that this bankruptcy court confronts a question governed by a state rule of decision.

■ In the context of chapter 9 eligibility, state law provides the rule of decision only for § 109(c)(2): whether the entity "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or

---

5. The precise statutory language is:
    (q) The parties shall maintain the confidentiality of the neutral evaluation process and shall not disclose statements made, information disclosed, or documents prepared or produced during the neutral evaluation process, at the conclusion of the neutral evaluation process or during any bankruptcy proceeding unless either of the following occur:
    (1) All persons that conduct or otherwise participate in the neutral evaluation expressly agree in writing, or orally in accordance with Section 1118 of the Evidence

Code, to disclosure of the communication, document, or writing.
    (2) The information is deemed necessary by a judge presiding over a bankruptcy proceeding pursuant to Chapter 9 of Title 11 of the United States Code to determine eligibility of a municipality to proceed with a bankruptcy proceeding pursuant to Section 109(c) of Title 11 of the United States Code. CAL. GOVT.CODE § 53760.3(q).

6. *Cf.* Government Code § 53760.3(q) (specifically incorporating Cal. Evid.Code § 1118).

by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;[.]"

Indeed, § 109(c)(2) presents a question of pure state law. Under that provision, it has been determined as a matter of New York State constitutional law that the Governor of New York had the authority to authorize an entity to file a chapter 9 case. *In re N.Y.C. Off–Track Betting Corp.*, 427 B.R. 256, 264 (Bankr.S.D.N.Y.2010). By the same token, nothing in New York law empowered the Suffolk County (N.Y.) Legislature to authorize a chapter 9 filing. *In re Suffolk Regional Off–Track Betting Corp.*, 462 B.R. 397, 414–21 (Bankr. E.D.N.Y.2011).

Here, California constructed its own gate at the entrance to the chapter 9 arena and is entitled to have it construed as a matter of state law.

All other eligibility questions under § 109(c)—§ 109(c)(1) municipality; § 109(c)(3) insolvent; § 109(c)(4) desire to effect plan of adjustment; and § 109(c)(5) creditor negotiation—and the good faith question under § 921(c) are federal questions based on, and created by, the federal Bankruptcy Code and subject to a federal rule of decision as to which the California confidentiality provision does not control.

In short; the only portion of California Government Code § 53760.3(q) that applies to the chapter 9 eligibility analysis in this instance is the question whether the City complied with the neutral evaluation requirement.

### B

Having concluded that the California statutory confidentiality requirement applies to § 109(c)(2), but only to § 109(c)(2), the focus shifts to what the City wants permission to disclose, which begins with a focus on the precise terms and meaning of the confidentiality statute in order to ascertain what is and is not protected.

The terms of California Government Code § 53760.3(q) provide (with the critical terms emphasized):

(q) The parties shall *maintain the confidentiality of the neutral evaluation process* and shall *not disclose statements made, information disclosed,* or *documents prepared or produced* during the neutral evaluation process, at the conclusion of the neutral evaluation process or during any bankruptcy proceeding unless either of the following occur:

(1) All persons that conduct or otherwise participate in the neutral evaluation expressly agree in writing, or orally in accordance with Section 1118 of the Evidence Code, to disclosure of the *communication, document,* or *writing.*

(2) The information is deemed necessary by a judge presiding over a bankruptcy proceeding pursuant to Chapter 9 of Title 11 of the United States Code to determine eligibility of a municipality to proceed with a bankruptcy proceeding pursuant to Section 109(c) of Title 11 of the United States Code.

Cal. Govt.Code § 53760.3(q) (emphases supplied).

The important question relates to the meaning of the phrase "maintain the confidentiality of the neutral evaluation process." It is noteworthy that the remainder of the section refers only to specific categories of statements, communications, information, and documents and is followed by a temporal clause extending the protection beyond the conclusion of the neutral evaluation process. Further, the part that provides that all parties can agree to disclosure of communications, documents, or

writings says nothing about the process itself. CAL. GOVT.CODE § 53760.3(q)(1).

The analysis is informed by two findings made by the California legislature in Assembly Bill 506 ("AB 506"), which enacted the amendments to Government Code § 53760 creating the neutral evaluation process. First, it found that "allowing the interested parties to exchange information in a confidential environment with the assistance and supervision of a neutral evaluator" assists in determining whether obligations can be renegotiated on a consensual basis.[7] Second, it made findings designed to excuse the neutral evaluation process from open meeting laws, which findings focused on the need for "secure documents."

The statute is not ambiguous on what remains confidential after the neutral evaluation process is completed. What remains protected are the more specific items listed in Government Code § 53760.3(q): "statements made," "information disclosed," and "documents prepared or produced" or, as listed later in the provision, "communication," "document," and "writing." This is generally consistent with the "secure document" finding of § 7 of AB 506.

■ But the statute is ambiguous about the temporal aspect of the meaning of the phrase "maintain the confidentiality of the neutral evaluation process" in Government Code § 53760.3(q). In context, the court concludes that it is a reference to the entire process that functions to impose a shroud of secrecy only during the pendency of the process. During the pendency of the process, it is not permissible to reveal the number and length of meetings, the identity of the participants, the types of issues discussed, and the status of negotiations because that information is part of the "confidentiality of the neutral evaluation process." While there may be good reason to continue to protect "statements made," "information disclosed," and "documents prepared or produced" even after the neutral evaluation process concludes, the justification is weaker for protecting the number and length of meetings, identity of participants, types of issues discussed, and status of negotiations when the process concludes.

■ This brings into focus the City's request that this court grant permission under the authority conferred on a bankruptcy judge by Government Code § 53760.3(q)(2) to reveal: (1) the number and length of meetings between the City and its various creditors; (2) the identity of the participants at such meetings; (3) the types of issues discussed; and (4) the status of negotiations between the City and each interested party as of the petition date.

While this information was appropriately embargoed during the conduct of the neutral evaluation process by virtue of the "maintain the confidentiality" clause, that confidentiality protection ceased, as a matter of California law, once that process ended. Accordingly, there is no present impediment of California law to revelation

---

7. The precise finding in AB 506 on this point is:

> (g) Through the neutral evaluation process, the neutral evaluator, a specially trained, neutral third party, can assist the municipality and its creditors and stakeholders to fully explore alternatives, while allowing the interested parties to exchange

> information in a confidential environment with the assistance and supervision of a neutral evaluator to determine whether the municipality's contractual and financial obligations can be renegotiated on a consensual basis.

Cal. Assembly Bill 506, § 1(g), enacted and approved by Governor, Oct. 9, 2011.

of that information in and during the chapter 9 case.

■ The remainder of the City's request—to reveal "financial and other information shared, the offers exchanged and the discussions between the parties"—does remain protected by § 53760.3(q). because those categories fit within the statutory categories "statements made, information disclosed, or documents prepared or produced" for which protection unambiguously survives after completion of the neutral evaluation process.

This court is not presently persuaded that any of the statements made, information disclosed, or documents prepared or produced during the neutral evaluation process, all of which remain protected under the California confidentiality requirement, are "necessary . . . to determine eligibility" under § 109(c)(2). CAL. GOVT. CODE § 53760.3(q)(2). As to eligibility issues under §§ 109(c)(1) and (c)(3), (c)(4), and (c)(5), those are federal issues that will be addressed in the next section.

As to the state law issue under § 109(c)(2), the information that either is not, or is no longer, protected (i.e. number and length of meetings, identity of participants, types of issues discussed, and status of negotiations as of petition date) is eligible to be used without restriction and ought to suffice to establish at least a prima facie case that § 109(c)(2) has been satisfied and that, as a matter of California law, the City is permitted to file a chapter 9 case. Indeed, as to status of negotiations, counsel for the City announced during the hearing on the motion that agreements had been reached with two unions to amend collective bargaining agreements.

Accordingly, the City's request under California Government Code § 53760.3(q)(1) will be denied, without prejudice to being revisited in the event a subsequent contest over § 109(c)(2) arises.

## C

The analysis now shifts to the federal law facet of the confidentiality issue. All chapter 9 eligibility issues except § 109(c)(2) are creatures of federal law, and federal law provides the rule of decision.

Federal policy is as encouraging of settlements as is state law, but it takes the different tack of preferring such tools as limiting admissibility in evidence and the protective order as being able to be fashioned to particular situations with more precision than a blanket privilege.

### 1

■ We begin by dispensing with the issue of privilege. Federal Rule of Evidence 501 controls privileges in federal litigation and, as relevant to settlement and mediation discussions, relies on federal common law.

As no settlement discussion privilege or mediation privilege is recognized in either the U.S. Constitution, or a federal statute, or rules prescribed by the Supreme Court, the question becomes whether there is a common-law privilege that has been judicially recognized "in the light of reason and experience." Fed.R.Evid. 501.

There is an ongoing debate over whether there should be a federal common law settlement negotiation privilege. *In re MSTG, Inc.*, 675 F.3d 1337, 1342 (Fed.Cir. 2012) ("MSTG"). The circuits that have addressed the question are divided. The Sixth Circuit recognizes such a privilege; the Seventh Circuit and the Federal Circuit do not. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 979–83 (6th Cir.2003) (privilege recognized); *In re Gen. Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1124 n. 20 (7th Cir.1979) (no privilege);

*MSTG*, 675 F.3d at 1343–48 (no privilege). Although the Ninth Circuit does not appear to have taken a position, district courts within the Ninth Circuit are divided on the question. *Matsushita Elec. Indus. Co. v. Mediatek, Inc.*, 2007 WL 963975 (N.D.Cal.2007) (no privilege); *California v. Kinder Morgan Energy Partners, L.P.*, 2010 WL 3988448 (privilege recognized).

For purposes of the present situation, this court is persuaded by the Federal Circuit's comprehensive analysis that a settlement negotiation privilege is not necessary. In particular, other tools in the toolbox—especially the protective order— are adequate to protect confidentiality of settlement discussions where necessary to promote settlement. *See MSTG*, 675 F.3d at 1346–47. Since neither the Ninth Circuit nor the Supreme Court has recognized a settlement negotiation privilege as a matter of federal common law, this court holds that the California neutral evaluation process is not protected by a privilege.

2

The lack of privilege is not the end of the matter. Federal policy favors settlement and disfavors undermining settlement discussions in a manner that could chill the productivity of such discussions in future situations.

a

Federal Rule of Evidence 408 prohibits admission into evidence in civil litigation of compromise offers and statements made in negotiations to prove or disprove the validity or amount of a disputed claim or to impeach by prior inconsistent statement or contradiction. Fed.R.Evid. 408.

An objection to the proffer of any evidence in this case of statements made, information disclosed, or documents prepared or produced during the pre-filing neutral evaluation process, either during a hearing or in motion papers and declarations, will have a sympathetic reception in the eyes of the court.

b

■■ A protective order issued under the court's inherent authority is also appropriate to preserve confidentiality in this chapter 9 proceeding of the statements made, information disclosed, or documents prepared or produced during the pre-filing neutral evaluation process.

Although those pre-filing discussions concluded, the settlement discussions are not finished. Experience of cases such as *Vallejo* in this judicial district teaches that fashioning a successful plan of adjustment is more of an exercise in negotiation and compromise than a litigation exercise.

Accordingly, a sitting bankruptcy judge from another district has been appointed as Judicial Mediator to be available to serve the needs of this case, without prejudice to the ability of the parties also to employ private persons to facilitate discussions. This measure is consistent with the policy inherent in the alternative dispute resolution provisions in the Federal Judicial Code. 28 U.S.C. §§ 651–53. Confidentiality is expressly contemplated. 28 U.S.C. § 652(d).

Whatever goodwill, confidence, and lines of communication that may have been established during the pre-filing neutral evaluation process deserve to be fostered with the certainty that will be useful in the discussions during this case. Such discussions will be vital to the formulation of a successful plan of arrangement.

In issuing such a protective order, this court is taking an incremental approach. As the case develops, it may become appropriate to relax the protective order in various respects so that the rights of all parties can be fully examined.

■■ As a first increment of disclosure, it is appropriate (and "necessary" if an

appellate court were to hold that the California statute applies to all eligibility questions) to authorize the City to release its. "790–page 'ask' created by the City that details the City's current situation and lays out a proposed plan—equivalent to a chapter 9 plan—to address the City's financial shortfall."

This limited disclosure is necessary in light of the ruling by the Bankruptcy Appellate Panel of the Ninth Circuit in *Vallejo* that § 109(c)(5)(B), upon which the City relies for eligibility, "requires negotiations with creditors revolving around a proposed plan, at least in concept." *Vallejo*, 408 B.R. at 297. Disclosure of the proposed plan that formed the basis for discussions during the pre-filing early neutral evaluation is part of the City's prima facie case on the issue of eligibility.

As noted, if objections to the petition are made that place various elements of eligibility in actual dispute, then further relaxations of the protective order will be appropriate.

### Conclusion

With respect to the question of eligibility under 11 U.S.C. § 109(c)(2), the City's motion will be denied as unnecessary to the extent that it seeks permission to dispense with confidentiality of the California pre-filing neutral evaluation process with respect to the number and length of meetings between the City and its creditors, the identity of the participants at such meetings, the types of issues discussed, and the status of negotiations between the City and each interested party as of the petition date. Those matters are no longer confidential under California law. The remainder of the motion, insofar as it is based on California Government Code § 53760.3(q), is denied, without prejudice.

With respect to statements made, information disclosed, or documents prepared or produced during the pre-filing neutral evaluation process, they are not privileged but shall be protected from disclosure by a protective order issued by this court forbidding disclosure, which protective order may be adjusted from time to time. The protective order shall not apply to the "790–page 'ask' created by the City that details the City's current situation and lays out a proposed plan—equivalent to a chapter 9 plan—to address the City's financial shortfall."

A separate order will issue.