REYNA, Circuit Judge,
dissenting.
I disagree that this court should create a new agent-client privilege. The presump *1303 tion against the creation of. new privileges has not been overcome by any showing that the public interest will be served or that there is a real need for such a privilege. Congress recognized that agents' would not have the same privileges as attorneys, and no appellate court or legislature has created an agent-client privilege.- An . attorney-client-like privilege should not apply merely because someone is enabled to practice limited law before a single specific administrative agency.
Our federal justice system contemplates that parties are obligated to provide each other with information relevant to their dispute. This sharing of information has multiple purposes. It allows each side to determine what happened, and what the rights and responsibilities of the parties are as they seek a judicial resolution of their dispute. But the obligation is also a promise that our justice system shall remain open to the public. Our evidentiary rules allow for discovery'precisely because our justice system seeks to ascertain the truth. Truth is a weighty interest, and procedural bars on discovery must therefore be narrowly construed and new procedural bars not lightly created. At first blush, it made sense, even common sense, that the attorney-client privilege be bent to cover patent agents. But upon informed reflection, I found the factors courts consider in creating new privileges do not favor such a creation in this case.[1] Here, the need to ascertain the truth should prevail.
A Presumption Against Creating New Privileges Exists
Courts must hesitate before creating new privileges. “For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man’s evidence. When we come to examine the various claims of exemption, we’ start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.” United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence § 2192, at 64 (3d ed.1940)).
That the demand' for the truth is not to be derogated lightly is a cornerstone in the legitimacy of the U.S. system of justice. “tE]xceptions to the demand for every man’s evidence are not lightly created nor expansively' construed, for they are in derogation of the search for truth.” United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Privileges are properly recognized “only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.” Trammel v. United States, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (quoting Elkins v. United States, 364 U.S. 206, 234, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)).
No Sufficient Public Interest Supports Finding an Agent-Client Privilege
A party seeking judicial recognition of a new evidentiary privilege under Rule 501 must demonstrate “that the proposed privilege will effectively advance a public *1304 good.” In re MSTG, Inc., 675 F.3d 1337, 1345 (Fed.Cir.2012) (quoting In re Sealed Case, 148 F.3d 1073, 1076 (D.C.Cir.1998)).
The Majority indicates that the benefits of an agent-client privilege would be analogous to those of the attorney-client privilege. Maj. Op. at 1300-01. The attorney-client privilege is “rooted in the imperative need for confidence and trust.” Trammel, 445 U.S. at 51, 100 S.Ct. 906. Its purpose is tb encourage full and frank communication between an attorney and her clients and “thereby promote broader public interests in the observance of láw and administration of justice.” Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Similarly, the Majority states that a “patent agent privilege, ‘serves public ends’ ” by helping meet the “imperative need for confidence and trust”, in communications between agents and their clients. Maj. Op. at 1300.
This court, however, has held that a “need for confidence and trust alone[] is an insufficient reason to create a new privilege.” In re MSTG, Inc., 675 F.3d at 1345 (citing Univ. of Pa. v. EEOC, 493 U.S. 182, 194-95, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (rejecting privilege against disclosure of academic peer review materials)). We have explained that “the Supreme Court has rejected new privileges under Rule 501 even though recognition of a privilege would foster a relationship based on trust and confidence.” Id.
Additionally, the unique nature of patent prosecution practice reduces any public interest benefit achieved by a privilege in encouraging full and frank communication between a client and agent. Under Patent Office regulations, patent lawyers, patent agents, inventors, and assignees, among others, have “a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability” of an application. 37 C.F.R. § 1.56. See also, e.g., Kingsland v. Dorsey, 338 U.S. 318, 319, 70 S.Ct. 123, 94 L.Ed. 123 (1949). As a result, the interest'of encouraging full and frank communication is less effectively served by creating an agent-client privilege. For example, a client who is seeking a patent may be uncertain whether certain activity the client has performed-would make the invention she seeks to patent unpatentable. If her attorney or agent has properly informed her of the duty of candor to the Patent Office, however, the client will know that she has a duty to reveal this information to her attorney or agent, and that he must reveal it to the Patent Office if he believes it is material to patentability. And such information revealed tb the Patent Office during the prosecution of a patent , necessarily becomes public information.
As patent.agentsi-and clients are subject to a duty of candor before the USPTO, the Majority’s agent-client privilege can be effective only to encourage the disclosure of information that the client does not believe is material to whether the invention is patentable.- This is consistent with, counsel for Queens University’s statement at oral argument that, if the district court’s order to compel was upheld, “it’s unlikely that we’U.be able to show reversible error, to show that the mere compulsion of these documents has so tainted the case that this court should reverse on appeal.” Recording at 5:34, available at http://cafc. uscourts.gov/oral-argument-recordings.
No Pressing Need for an Agent-Client Privilege Exists
No pressing need for an agent-client privilege exists. “[Njonlawyers have practiced before the Office from its inception, with the express approval of the Patent *1305 Office and to the knowledge of Congress.” Sperry v. State of Fla. ex rel Fla. Bar, 373 U.S. 379, 388, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963). Only a few cases have arisen during that time involving the issue of an agent-client privilege, which suggests that existing, practices for dealing with, the concerns the Majority seeks to remedy are sufficient.[2]
In today’s practice, patent agent comr munications are usually found privileged when an agent is working under the supervision of an attorney. See, e.g., Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 204 (E.D.N.Y.1988); People v. Hairston, 111 Misc.2d 691, 444 N.Y.S.2d 853, 855 (Sup.Ct.1981). While some agents work as solo practitioners, “patent agents are rhope commonly found in law firms or as part Of an in-house patent team for a large company.” Lisa Kennedy, Patent Agents: Non-attorneys Representing Inventors Before the Patent Office, 49 Advocate 21 (2006).[3] A company desiring to use a patent agent but maintain a privilege may have its counsel, be it in-house or outside counsel, supervise the agent or hire .an agent already working for a law firm.
Further, any purported need for an agent-client privilege is. greatly minimized by the fact that patent agents and their clients have the opportunity to delete and destroy emails and other correspondence in the period of time between when they are exchanged and when they would be ■sought in litigation. Particularly for patent prosecution, which often occurs years before any litigation -involving the patent, patent agents and their clients may influence any obligation to produce documents and correspondence in litigation via their retention and destruction policies.
Under most circumstances, a patent agent helping a client prepare, file, and prosecute a patent application before the Patent Office has no duty to maintain in perpetuity all correspondence with the client regarding the patent application. Similarly, it is considered good practice among attorneys to have thoughtful document retention and destruction policies, and to encourage such practices for their clients. See, e.g.,-The Sedona Guidelines: Best Practice Guidelines & Commentary for Managing Information & Records in the Electronic Age, at iv (2d. ed.2007), https://thesedonaconference.org/ publications, (“Destruction is an acceptable stage in the information life cycle; an organization may destroy or delete electronic information when there is no continuing value or need to retain it.”); R. Thomas Howell, Jr. & Rae N. Cogar, Developing and, Implementing a Record Retention Program, 50 Prac. Law. (ALI-ABA) 6, 26 (2004) (“If records are no longer of use in the business context and there are no statutory, regulatory or investigative reasons to retain them, then it is in the company’s best interest to dispose of them.”).
It is apparent, therefore, that the practice of agents before the USPTO has not given rise to a pressing need for a privilege, especially given- that sufficient privilege-like safeguards already exist.
This Court’s Newly-Created Agent-Client Privilege is Complicated and Uncertain
Where a proposed privilege has many exceptions or an uncertain scope, we *1306 should lean against creating it. See, e.g., Upjohn, 449 U.S. at 393, 101 S.Ct. 677 (“An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.”); In re MSTG, Inc., 675 F.3d at 1346 (“The existence of [ ] exceptions would distract from the effectiveness, clarity, and certainty of the privilege.”).
I believe that the scope of this new privilege is more complicated than the Majority perceives.[4] The Supreme Court in Sperry did not “determine what functions are reasonably within the scope of the practice authorized by the Patent Office.” 373 U.S. at 402 n. 47, 83 S.Ct. 1322. As indicated by the regulation cited by the Majority as “helping] to define the scope of communications covered under the patent-agent privilege,” Maj. Op. at 1301, the scope of a patent agent’s practice has not been precisely delimited. See 37 C.F.R. § 11.5(b)(1) (“Practice before the Office in patent matters includes, but is not limited to [a list of activities].”) (emphasis added). The lack of certainty regarding the parameters of patent agent practice in turn makes the scope of the Majority’s new privilege uncertain.
The Majority gives a few examples of activities that would not be privileged if conducted by an agent: “[f]or instance, communications with a patent agent who is offering an opinion on the validity of another party’s patent in contemplation of litigation or for the sale or purchase of a patent, or on infringement.” Maj. Op. at 1302 (citing Changes to Representation of Others Before the United States Patent and Trademark Office, 73 Fed.Reg. 47,-650-01, 47,670 (Aug. 14, 2008)).
However, 73 Fed.Reg. ■ 47650 indicates that in some circumstances preparing an “opinion of the validity of another party’s patent when the client is contemplating litigation” is properly within the scope of a patent agent’s practice. The regulation explains that such an opinion is properly within the scope of an agent’s practice when the client is “seeking reexamination of the other party’s patent,” Id. This analysis regarding reexaminations would also be true of inter partes review and other practice before the Patent Trial and Appeal Board.
Therefore, under the Majority’s newly created agent-client privilege, some validity opinions drafted by an agent will be privileged and others will not be, depending on the client’s intent in seeking the opinion from the agent. But how do we determine which is which, and what does such contentious activity say about the demand for truth?
As another example, complications arise when we consider the scope of an agent’s authority to prepare assignments and other contracts. Under 37 C.F.R. § T1.5(b)(l)(ii), in certain circumstances an agent may properly draft assignments “in contemplation of filing or prosecution of a *1307 patent application,” as long as the agent “does no more than replicate the terms of a previously existing oral or written obligation of assignment.”
The USPTO’s comments on this regulation indicate that this express statement of what an agent is permitted to do does not necessarily exclude agents from preparing contracts in other circumstances. The USPTO explained that “[t]he Office’s longstanding position has been that ‘[p]atent agents * * * cannot * * * perform various services which the local jurisdiction considers as practicing law. For example, a patent agent could not draw up a contract relating to a patent, such as an assignment or a license, if the state in which he/she resides considers drafting contracts as practicing law.’ ” Changes to Representation, 73 Fed.Reg. at ,47,668. (ellipses in original).
Therefore, in some respects, the scope of a patent agent’s authorized practice varies based on state law. Activities not expressly authorized by the USPTO’s regulation are neither clearly prohibited or permitted, and instead are permitted or prohibited based on state law regarding the unauthorized practice of law.
As the regulation only permits an agent to prepare contracts for assignments occurring before an application is filed, the regulation does not address when it is appropriate for an agent to prepare assignments while an application is pending or after a patent issues. However, the USPTO comments on the regulation indicate that, in some circumstances, an agent may properly draw up an assignment for an issued patent. Id. Yet, in some circumstances, doing so, would be outside the scope of an agent’s authorized practice before the USPTO. Id.[5]
I believe that advising clients on whether a privilege would apply in court to the various acts a patent agent might be asked to perform is itself outside the scope of an agent’s authorized practice before the USPTO, Thérefore, a client concerned about maintaining a privilege may need to hire an attorney to determine whether this court’s newly created agent-client privilege would apply in her circumstances.
- Congress and the Supreme Court Have Recognized a Dipperence Between Agents And Lawyers
• The Majority' Opinion focuses on Congress’s approval Of patent agents to practice before the USPTO. I do not see this approval as Congress seeking to vest patent agents with all benefits and obligations of an attorney. Rather, Congress saw the need to regulate agents’ practice before the USPTO by limitation and restriction, and by ensuring that the distinction between a patent agent and a patent lawyer was clear and bright, for the public good.
In a hearing before the House Committee'on Patents in 1928, several members of Congress challenged the USPTO’s practice at that time of allowing patent agents to call themselves “patent attorneys,” as they found it misleading.. Prevention of Fraud in Practice Before the Patent Office: Hearing on H.R. 5527 Before the H. Comm, on Patents, 70th Cong., 1st Sess. 17-19 (1928). For example, one member *1308 of Congress explained that it was misleading to inventors when they hired a “patent attorney” to prosecute a patent expecting that they were hiring a lawyer who would also be able to help.them protect their rights in court. Id. at 19.[6]
In discussing a law that would restrict patent agents from using the terms “patent lawyers” and “patent attorneys,” both a member of Congress and the Commissioner of Patents indicated that .they thought “the law [ ] should .be made so plain that it would give the public all the notice possible as to just whom a man is employing, and what the extent of that person’s privileges may be when he comes to employ him to handle his work.”. Id. at 16.
To remedy this confusion- between agents and attorneys, a regulation that “prohibited agents so registered from representing themselves to be attorneys, solicitors or lawyers” was promulgated, as the Supreme Court in Sperry noted. 373 U.S. at 393 n. 29, 83 S.Ct. 1322. See 37 C.F.R. § 11.704(b) (“A registered practitioner who is;Jan attorney may use the designation..‘Patents,’.‘Patent Attorney,’ ‘Patent Lawyer,’ ‘Registered Patent Attorney,’ or a substantially similar designation. A registered practitioner who is not'an attorney may use the designation ‘Patents,’ ‘Patent Agent,’ ‘Registered Patent Agent,’ or a substantially similar designation”).[7] The focus on this distinction is an indication that allowing agents to practice before the USPTO was not intended to work to confer on patent agents the professional status of lawyers.
Similarly, in Sperry the Supreme Court recognized a distinction between non-attorney patent agents and lawyers formally admitted to practice before a state bar. 373 U.S. at 394-96, 83 S.Ct. 1322. As one district court has stated, “[t]o argue that because a patent agent competently engages in legal activities similar to thos'e of an' attorney, he should be accorded the status of an attorney is to turn the logic of Sperry on its head. ' Sperry held that although patent agénts are not equivalent to attorneys, they may engage in the practice of law with respect to patent activities before the U.S. Patent Office, as authorized by Congress.” In re Rivastigmine Patent Litig., 237 F.R.D. 69, 102 (S.D.N.Y.2006); see also, e.g., Agfa Corp. v. Creo Products, Inc., No. CIV.A. 00-10836GAO, 2002 WL 1787534, at *3 (D.Mass. Aug. 1, 2002) (“[Underlying the issue resolved in Sperry is the recognition that there is a clear distinction between a non-lawyer patent agent and a lawyer formally admitted to practice before a state bar,”).
The Majority reasons that agents must have a privilege because otherwise it would “frustrate [Congress’s purpose] to‘afford *1309 clients the freedom to choose between an attorney and a patent agent.” Maj. Op. at 1298. Would that analysis also require permitting agents to practice before courts, for example, in appealing the USP-TO’s rejection of, patent claims to this court? It seems that a client in that situation who hired an agent is disadvantaged in needing to additionally hire .a patent lawyer, whereas someone who had hired, a patent lawyer to prosecute the patent before the USPTO could continue to use the same lawyer before this court.
Congress Intended that Agents not Have a Privilege
“[I]n determining whether a new privilege should be adopted, courts look to whether Congress had considered that or related questions.” In re MSTG, Inc., 675 F.3d at 1343 (citing Univ. of Pa., 493 U.S. at 189, 110 S.Ct. 577).
As discussed below, Congress was aware already in 1928 that agents would not be able to claim a privilege on behalf of their clients if the patents they helped prosecute became involved in litigation. While Congress recognized that allowing clients to use patent agents would provide some advantages and disadvantages, no legislation has been adopted creating an agent-client privilege. It is not appropriate for this court to “strike the balance differently from the one Congress has already adopted.” Id. at 1344.
The Majority cites with approval, as did the' Supreme Court in Sperry, certain testimony from the Commissioner of Patents before Congress in 1928 that the rights of patent agents before the Patent Office were to be exactly the same as patent lawyers:
When asked “[w]hat is going to be the difference in the legal prerogatives of the agents and the others that come in,” the Commissioner of Patents responded that “their rights in the Patent Office will be exactly the same. Their rights in the courts will be different.” (Emphasis added.)
Sperry, 373 U.S. at 394, 83 S.Ct. 1322 (quoting Prevention of Fraud in Practice Before the Patent Office: Hearings on H.R. 5527 Before the H. Comm. on Patents, 70th Cong., 1st Sess. 15 (1928)); Maj. Op. at 1297.
As ■ this testimony indicates, ’ patent agents’ rights in the courts would be different. The Commissioner of Patents further explained that patent agents’ rights in court would be different from those of patent lawyers in two respects: patent agents would not be able to represent their clients in court; and they would also not be able to claim privilege for their clients in court.[8] -This exchange - demonstrates that *1310 the USPTO, the agency authorized by Congress to regulate patent agents, and Congress understood that they were not extending a privilege to patent agents. Congress knew that the agents it was authorizing to practice before the Patent Office would not be able to claim a privilege on behalf of their clients, and it did not consider creating such a privilege. In this manner, Congress has already expressed its intent, one that this court has no apparent basis at this time to override. When the Majority asserts that not creating an agent-client privilege would “undermin[e]’’ Congress’s decision to allow agents to practice, it overlooks the fact that Congress understood that patent agents would not have such a privilege. Maj. Op. at 1300.
The Majority attempts to discount the exchange described above by stating that it was “unrelated to the actual purpose for which the Commissioner’s testimony was solicited — i.e., the treatment of patent agents and patent attorneys before the Patent Office.” Maj. Op. at 1298 n. 2. That is not correct. Congress sought the Commissioner to testify regarding certain proposed legislation. Prevention of Fraud in Practice Before the Patent Office: Hearing on H.R. 5527 Before the H. Comm, on Patents, 70th Cong., 1st Sess. 5 (1928). One provision of that legislation made it unlawful for agents to hold themselves out as lawyers or attorneys unless they were “legally admitted to practice law in a State or Territory,” or certain other areas like the District of Columbia. Id. at 2. This testimony was regarding that provision. See id. at 14.
The Majority discounts that Congress understood that agents authorized to practice before the USPTO would not have a privilege in courts by asserting that “neither the Commissioner nor Congress could have foreseen in 1928 that patent litigation would expand as it has.” Maj. Op. at 1298 n. 2. This assertion is irrelevant. Even if it were relevant, the growth of patent litigation is not limited to recent years.[9] The swing of the patent litigation pendulum is well known in the industry.
The Majority states that “neither the Commissioner nor Congress could have foreseen in 1928 ... that the prosecution history of patents would take on such a meaningful role in [] litigation, both in connection with claim construction and in connection with a variety of invalidity and unenforceability challenges.” Maj. Op. at 1298 n. 2. However, this factor, even if true, is irrelevant to whether there should be an agent-client privilege, as the prosecution history of a patent is never protected by any privilege.
Prosecution history is “the public record of the patent proceedings.” Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 727, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Prosecution history, also known as the “file wrapper” of a *1311 patent, “consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent.” Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed.Cir.2005).
For good reason, the prosecution histories of all patents are open to public inspection under 37 C.F.R. § 1.11. In most cases, a patent’s prosecution history can even be found online freely available for download from the USPTO’s website. While it may be true that prosecution' histories have taken on a more significant role in litigation since 1928, the full range of the history of a patent’s prosecution rightfully continues to remain open to the public’s full scrutiny.[10]
No State has Created an Agent-Client Privilege
“[T]he policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one.” Jaffee, 518 U.S. at 12-13, 116 S.Ct. 1923. In Jaffee, the Supreme Court indicated that the propriety of federal court recognition of a psychotherapist privilege under Rule 501 was “confirmed by the fact that all 50 States and the District of Columbia have enacted into law some form of psychotherapist privilege.” Id. at 12, 116 S.Ct. 1923. Here, in contrast, we are aware of no state that has enacted legislation recognizing an agent-client privilege.
The Majority argues that this factor is “irrelevant given the uniquely federal character of the activities at issue here.” Maj. Op. at 1299. However, the Supreme Court’s determination in Sperry that states cannot prohibit patent agents from practicing before the USPTO does not mean that the state courts and legislatures could not have recognized an agent-client privilege. ■ To the contrary, states do have the legislative authority to create an agent-client privilege, and doing so would not “conflict with the federal determination that patent agents may practice law before the Patent Office.” Maj. Op. at 1299.
As states establish their own requirements for claiming privilege in their courts, state courts do not have to recognize federal common law privileges under Rule 501. “Federal decisions on testimonial privileges are not binding on the states.” Loesche v. State, 620 P.2d 646, 649 n. 4 (Alaska 1980). See also, e.g., People v. Gonzales, 56 Cal.4th 353, 154 Cal.Rptr.3d 38, 296 P.3d 945, 966-67 (2013) (“In Jaffee ... the United States Supreme Court adopted a psychotherapist-patient privilege applicable in federal proceedings, but the ‘Jaffee decision was grounded in the Federal Rules of Evidence, not the federal Constitution, and subsequent lower court decisions confirm that the federal psychotherapist-patient privilege recognized in Jaffee ‘is not rooted in any constitutional right of privacy.’ ”) (footnote omitted); State v. Roach, 669 N.E.2d 1009, 1011-12 (Ind.Ct.App.1996) (reversing a trial court’s expansion of Indiana privilege law, which had been based in part on a United States Supreme Court decision on federal common law privilege).[11] States *1312 could have previously recognized an agent-client privilege. And this court’s decision will neither obligate states to recognize an agent-client privilege nor prohibit them from recognizing one.
Indeed, the federal common law privilege law does not even control all proceedings in federal courts. State privilege law governs in federal civil cases “regarding a claim or defense for which state law supplies the rule of decision.” Fed.R.Evid. 501. In Lebovitz v. Hartford Insurance Co. of the Midwest, 918 F.Supp.2d 422, 425-26 (W.D.Pa.2013), the court'noted that Jaffee was not dispositive of whether a social worker was protected by Pennsylvania’s statutory “psychiatristdicensed psychologist privilege,” as it was a diversity action in which Pennsylvania privilege law applied.
States have applied state law in the past when determining whether to grant agents a privilege. See,, e.g., Kent Jewelry Corp. v. Kiefer, 202 Misc. 778, 113 N.Y.S.2d 12, 16,(Sup.Ct.1952) (applying New York law to determine if, communications between a patent agent and client were privileged).
. The fact that Congress has authorized patent agents to practice before the Patent Office does not require a different result: Congress also authorized patent lawyers to practice before the Patent Office, but states apply state law in determining whether to grant them a privilege as well. See, e.g., R.G. Egan Equip., Inc. v. Polymag Tek, Inc., 195 Misc.2d 280, 758 N.Y.S.2d 763, 771 (Sup.Ct.2002) (applying New York law to determine if correspondence between a patent attorney and client was protected by the attorney-client privilege); Zim v. VLI Corp., 621 A.2d 773, 780 (Del.1993) (applying Delaware law to determine whether communications with patent counsel that was practicing before the Patent Office were privileged); Beacon Oil Co. v. Perelis, 263 Mass. 288, 160 N.E. 892, 894 (1928) (citing Massachusetts case law in determining if communications with patent attorneys were privileged). See also, e.g., In re Monsanto Co., 998 S.W.2d 917, 931 (Tex.App.1999) (applying Texas law to determine if correspondence about patent application with attorneys was protected by the attorney-client privilege).
It is interesting to contemplate how the Majority determines that a federal common law agent-client privilege should be created, but nonetheless finds that for a state court to have recognized such a privilege would conflict with federal .patent Jaw. In addition, the Majority does not address why a state would lack authority to create a privilege when federal patent law issues arise in cases that state courts may properly adjudicate, such as cases involving malpractice, fraud, licenses, and contracts involving patent rights.-. See, e.g., HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., 600 F.3d 1347, 1354 (Fed.Cir.2010) (cases implicating patent law issues do not arise under federal patent law if an alternative, non-patent theory may entitle the plaintiffs to their requested relief); see also e.g., Bd. of Regents, Univ. bf Tex. Sys. v. Nippon Tel. & Tel. Corp., 414 F.3d 1358, 1365 (Fed.Cir.2005). Admittedly, the frequency with which the issue of an agent-client privilege arises in state courts is less than, for example, a psychotherapist privilege. However, there is nothing prohibiting states from recognizing an agent-client privilege. As no states have recognized an agent-client privilege, the fact that this court’s decision will not be binding on state courts or federal courts in diversity cases weighs against creating a privilege here. Having overlooked these circumstances, this court’s decision will only serve to create confusion and uncertainty regarding whether the agent-client privilege applies, for yesterday none existed.
*1313 The Judicial Conference Advisory Committee Did Not Recommend Creating ' an Agent-Client Privilege •
Related history of the Judicial Conference of the United States weighs against finding a- privilege here. First, the Judicial Conference Advisory Committee did not recommend an agent-client privilege in its 1973 proposed rules of evidence. Second, it appears that the Judicial Conference has not in recent years recommended such a privilege be created nor taken up the issue.
“[I]n determining whether new privileges should be recognized, the Supreme Court has been influenced by the list of evidentiary privileges recommended by the Advisory Committee of the Judicial Conference in its proposed Federal Rules of Evidence.” In re MSTG, Inc., 675 F.3d at 1342-43 (citing Jaffee, 518 U.S. at 13-14, 116 S.Ct. 1923; United States v. Gillock, 445 U.S. 360, 367-68, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980)).
“Under the Judicial- Conference proposed rules submitted to Congress, federal courts would have been permitted to apply only nine specifically enumerated privileges, except as otherwise required by the Constitution or provided by Acts of Congress.” Gillock, 445 U.S. at 867, 100 S.Ct. 1185. “Congress substituted the present language of Rule 501 for the draft proposed by the Advisory Committee of the Judicial Conference of the United States to provide the Courts with greater flexibility in developing rules of privilege on a case-by-case basis.” Id.
While the Advisory Committee’s nine privileges were not adopted, the Supreme Court’s holding in Gillock that Rule 501 did not include a state legislative privilege “relied, .in part, on the fact that no such privilege was included in the Advisory Committee’s draft.” In re MSTG, Inc., 675 F.3d at 1345. Similarly, .the Supreme Court in Jaffee found it persuasive in creating a psychotherapist privilege “that a psychotherapist privilege was among the hine specific privileges recommended” by the Judicial Conference Advisory Committee when it submitted its Proposed Federal Rules of Evidence. 518 U.S. at 14, 116 S.Ct. 1923.
An agent-client privilege was not among the nine privileges included in the Advisory Committee’s draft Rules of Evidence. S.Rep. No. 93-1277 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7058. The Supreme Court’s analysis of other proposed new privileges since the draft rules were proposed indicates that this weighs against creating an agent-client privilege.
Further, as the Judicial Conference is the national policy-making body for the federal courts, it remains tasked with “carry[ing] on a continuous study of the operation and effect of the general rules of practice and procedure now or hereafter in. use as prescribed by the Supreme Court for the other courts of the United States pursuant to law.” 28 U.S.C. § 331.
The Judicial Conference is charged with recommending to the Supreme Court any changes in federal court procedures that it deems “desirable to promote simplicity in procedure, fairness in administration, the just determination of litigation, and the elimination of unjustifiable expense and delay.” Id.
To my understanding, the Advisory Committee has. not even considered the issue of whether an agent-client privilege should be created, at least not within the past decade. That the Advisory Committee has not entertained the issue also weighs against creating an agent-client *1314 privilege.[12]
Lawyers Hold a Privilege Because of Their Professional Status
Contrary to the Majority opinion, the attorney-client privilege is not accorded to attorneys because they provide legal advice or practice law, but because of their professional status as attorneys. A communication made for the purpose of securing a legal opinion, legal services, or assistance in a legal proceeding is usually only privileged if it was expressed to “a member of the bar of a court, or his subordinate.” United States v. United Shoe Mach. Corp., 89 F.Supp. 357, 358 (D.Mass.1950). “There is no doubt that the federal common law limits the attorney-client privilege to communications between the client and a member of the bar or that attorney’s agent.” Duttle v. Bandler & Kass, 127 F.R.D. 46, 52 (S.D.N.Y.1989).
Courts in the past have regularly rejected attempts to extend an attorney-client-type privilege to non-lawyers, even when those non-lawyers act in a role also played by lawyers in other cases. See, e.g., Couch v. United States, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (no accountant-client privilege); Velasquez v. Borg, 28 F.3d 110, at ”1 (9th Cir.1994) (no “jailhouse-lawyer” privilege); Moorhead v. Lane, 125 F.R.D. 680, 686-87 (C.D.Ill. 1989) (same); Dabney v. Inv. Corp. of Am., 82 F.R.D. 464, 466 (E.D.Pa.1979) (no law-student privilege).
I agree with Justice Scalia that “the prototypical evidentiary privilege analogous to the-one asserted here — the lawyer-client privilege — is not identified by the broad area of advice giving practiced by the person to whom the privileged communication is given, but rather by the professional status of that person. Hence, it seems a long step from a lawyer-client privilege to a tax advisor-client or accountant-client privilege.” Jaffee, 518 U.S. at 20, 116 S.Ct. 1923 (Scalia, J., dissenting). While a patent agent may provide the same type of advice that a patent lawyer does — just as a tax advisor or accountant may provide the same type of advice that a tax attorney does — that does not necessitate that their communications be found privileged.
As the Supreme Court discussed in Sperry, patent agents are like other non-lawyers Congress has permitted to practice before federal agencies. 373 U.S. at 388, 396400, 83 S.Ct. 1322; 5 U.S.C. § 555. For example, under 8 C.F.R. § 292.1, certain categories of non-lawyers are authorized to represent others in immigration proceedings. See, e.g., Ramirez v. Immigration & Naturalization Sem, 550 F.2d 560, 563-64 (9th Cir.1977). For some of the categories, the non-lawyers do not need to have any training or certification to represent parties in immigration proceedings.[13] See, e.g., 8 C.F.R. § 292.1(3).[14]
*1315 While the Majority asserts that it is “without question that the privilege attaches to a communication made ‘for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding,’ ” Maj. Op..at 1295 (citing Spalding, 203 F.3d at 805), this'court in Spalding actually held “that; an invention record constitutes a privileged communication, as long as it is provided to an attorney ‘for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding.’ ” Id. (quoting Knogo Corp. v. United States, No. 19479, 1980 WL 39083 (Ct.Cl.1980)) (emphases added).
The Supreme Court Has Never Held That Patent Agents Practice Law
Even if a privilege should extend to anyone who practices láw, the Supreme Court has never held that patent agents practice law.- The Majority describes the Supreme Court in Sperry as “determining [that] the activities of patent agents before the Patent Office constitute the practice of law.” Maj. Op. at 1296. However, the Court in Sperry did not hold that patent agents practice law. What it said was that it did “not question the [Supreme Court of Florida’s] determination that under Florida law the preparation and prosecution of patent applications for others cónstitutés the practice of law.” Sperry, 373 U.S. at 383, 83 S.Ct. 1322.
In support, the Supreme Court cited two cases that stand for the proposition that state courts are the final authority on' interpreting state law: Greenough v. Tax Assessors, 331 U.S. 486, 497, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947) (state courts “are the final judicial authority upon the meaning of their state law”); and Murdock v. City of Memphis, 87 U.S. 590, 635, 20 Wall. 590, 22 L.Ed. 429 (1874) (“we must receive the decision of the State courts as conclusive” on issues not conferred by statute on federal courts).
Sperry merely held- that Florida could not bar patent agents from practicing before the USPTQ as the unauthorized practice of law. 373 U.S. at 404, 83 S.Ct. 1322. That holding does not necessitate the finding that patent.agent communications are privileged. The Supreme Court has also held that, without providing an effective alternative* states cannot bar inmates from providing each other legal assistance, despite claims that this was the unauthorized practice of law. Johnson v. Avery, 393, U.S. 483, 490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). And yet such inmates, “jailhouse lawyers,” have typically not been accorded attorney-client or a “jailhouse-lawyer” privilege. Moorhead v. Lane, 125 F.R.D. 680, 686 (C.D.Ill.1989); People v. Velasquez, 192 Cal.App.3d 319, 329, 237 Cal.Rptr. 366 (1987); Commonwealth v. Paradiso, 24 Mass.App.Ct. 142, 507 N,E.2d 258, 262 (1987); State v. Spell, 399 So.2d 551, 556 (La.1981).
- , Congress Did Not Legislate for Agents to Practice Law
Congress never believed that patent agents practice law, but rather that agents could appear and practice before an administrative agency. For example, in discussing the need for a method of disciplining patent agents who defrauded clients, as bar associations had no authority over them, a member of Congress stated “[a] patent attorney is not allowed to practice law as a regular attorney is allowed. He is not required to have the same legal training and skill and experience and so forth.” ■ 62 Cong. Rec. 1064-65 (1922) (emphasis added).. See also, e.g„ 59 Cong. Rec. 3926 (1920) (“In order to become a patent attorney does , a man have to go through an examination?- Does he have to *1316 establish’ good character and all that’ kind of thing? Attorneys who practice law have to do that.”) (emphasis added).
Even though patent agents practice before the USPTO in the same way patent lawyers do, a majority of the other courts that have considered this issue have concluded that an agent-client privilege does not exist. See, e.g., In re Rivastigmine Patent Litig., 237 F.R.D. 69,102 (S.D.N.Y.2006) (“But it does not follow that because the agent is permitted to engage in this defined subuniverse of legal practice, his activities are therefore equivalent to those of a practicing attorney.”); Agfa Corp. v. Creo Prods., Inc., No. 00-10836-GAO, 2002 WL 1787534, at *2 (D.Mass. Aug. 1, 2002) (“The ‘looks like a duck, walks like a duck’analysis ... works only if it regards as insignificant the fact that privilege is rooted, both historically and philosophically, in the special role that lawyers have, by dint of their qualifications and license, to give legal advice”).
Conclusion
Congress authorized the USPTO to permit non-lawyers to practice before the U.S. Patent and Trademark Office in patent matters, but recognized that clients who chose to use agents would have some disadvantages. One disadvantage was that their communications with their agent would not be privileged.
In Jaffee, Justice Scalia, writing in dissent, persuasively argued that the question before the Court was “whether (1) the need for [the asserted] privilege is so clear, and (2) the desirable contours of that privilege are so evident, that it is appropriate for this Court to craft it in common-law fashion, under Rule 501.” 518 U.S. at 35, 116 S.Ct. 1923. The need for an agent-client privilege is not clear, it is not evident what the precise contours of such a privilege will be, and it is not appropriate for this court to create it in common-law fashion, under Rule: 501.
None of the factors which courts consider in creating new privileges favor finding a new privilege here. I dissent, because in the absence of a showing that there is a real need for a new privilege to be created, the need to: ascertain the truth should prevail.

. The Majority’s opinion is based on "the light of reason and experience.” Maj, Op. at 1302. To be clear, this is not a dispute about law or statute, a factor that at the outset makes me leary.

. In Jaffee v. Redmond, 14 amicus briefs were filed supporting the recognition of a new privilege. 518 U.S. 1, 35, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In this case, we- have received no amicus briefs arguing that this court must create an agent-client privilege or that patent agents are greatly harmed by the ■lack of the privilege. Nor has this court ever been properly presented with this-precise issue. Yet, patent agents have been practicing before the USPTO for over a century.

. See footnote 5, infra, at page 1307.

. The Majority Opinion discusses how the USPTO recently issued a "Request for Comments” on issues including whether an agent-client privilege should exist. Maj. Op. at 1298-99 n. 4. I question the imperative that this court must decide this issue at this point in time when it is already being considered by the agency authorized to regulate patent agents. To date, the USPTO has not recommended the creation of an agent-client privilege by courts. Were it to do so, the USPTO would provide valuable and practical guid-anee, such as the proper scope for such a privilege.
While Rule 501 permits courts to create new privileges "in the light of reason and experience,” there is no need to rush to create a new privilege unrecommended by the Judicial Conference, the USPTO, the states, or the majority of courts that have previously considered this issue. The courts should be cautious in creating a new privilege under such circumstances.

. See, e.g., David Hricik, Patent Agents: The Person You Are, 20 Geo. J. Legal Ethics 261, 269 (2007) ("Patent agents are often employed by law firms that do not limit their practice to patent .prosecution,”). Query whether a patent agent may direct a patent lawyer, or own an enterprise limited to USP-TO practice that employs patent lawyers? Does not this new privilege create a slippety slope toward the practice of law being treated not as a profession, but as a. mere trade? These questions have not been explored by the . court, but should they be?

. The Patent Office initially allowed patent agents to use the term “attorney” (but not “lawyer”) because they were considered to be "attorneys-in-fact.” Id. at 17, 22-23, 68, 91. An "attorney-in-fact” is “[s]trictly, one who is designated to transact business for another; a legal agent,” Attorney, Black's Law Dictionary (10th ed.2014). In contrast, an “attorney-at-law” is defined as "[s]omeone who practices law; LAWYER,” Id.

. The USPTO’s regulation prohibiting non-attorney patent agents from marketing themselves as "attorneys”-took effect in 1959. 37 C.F.R. § 1.345(c) (1959) ("No agent shall, in any material specified in paragraph (b) of this section or in papers filed in the Patent Office, represent himself to be an attorney, solicitor, or .lawyer."). -Though non-attorney agents challenged the promulgation of this regulation, it was upheld. See Evans v. Watson, 269 F.2d 775, 777-78 (D.C.Cir.1959) (affirming the USPTO’s regulation that prevents a non-attorney patent agent from representing himself to be an attorney, solicitor or lawyer); cf. People v. Miller, 43 Misc.2d 853, 252 N.Y.S.2d 497, 498 (1964) ("The connotation of the word 'attorney’ needs no elucidation.”).

. The testimony was as follows:
Mr. JENKINS. What is going to be the difference in the legal prerogatives of the agents and the others that come in?
Commissioner ROBERTSON. Their rights in the Patent Office will be exactly the same. Their rights in the courts will be different. For example, a man who is merely a patent agent under the present law, who is not a patent attorney and is not a member of the bar, cannot take his case to the court of appeals. He will have to employ somebody else who is a member of the bar to take his .case to the court of appeals. So, when this bill goes through, we will have patent attorneys, members of the bar, and patent agents, nonmembers pf the bar, all having the same prerogatives in the Patent Office, except this, that if their clients get mixed up in court proceedings— Mr. JENKINS. They will be employing as a patent lawyer to represent them a man who is not a patent lawyer here in the courts?
Commissioner ROBERTSON. Not that, but if their clients get mixed up in civil proceedings in the courts, the one who has a lawyer for his attorney will have a lawyer who is able to claim privilege for his client; but the man who has an agent for his *1310 attorney will not be able to claim that privilege.
Prevention of Fraud in Practice Before the Patent Office: Hearing on H.R. 5527 Before the H. Comm, on Patents, 70th Cong., 1st Sess. 15 (1928).

. Recent scholarship has indicated that, in the mid- to late-1800s, the United States experienced a period where patent litigation surged. Christopher Beauchamp, The First Patent Litigation Explosion, 125 Yale L.J. 796 (2016). ‘‘[T]he nineteenth century saw an even bigger surge of patent cases” than the twenty-first century has. Id. at Abstract. For example, ”[e]ven the absolute quantity of late-nineteenth-century patent cases bears comparison to the numbers filed in recent years: the Southern District of New York in 1880 would have ranked third on the list of districts with the most patent infringement suits filed in 2014 and would have headed the list as recently as 2010.” Id.

. The Majority states that Congress has since 1934 "passed the torch” for creating new privileges to the courts. Maj. Op. at 1302. This is incorrect. For example, in 1998 Congress created a limited privilege for non-lawyers authorized to practice before the Internal Revenue Service. 26 U.S.C. § 7525; United States v. Frederick, 182 F.3d 496, 502 (7th Cir.1999).

. .Also, for example, under California law, no privilege can be recognized in the absence of an express statutory provision. Cal. Evid, Code § 911; Chronicle Publ’g Co. v. Superior Court, 54' Call2d 548, 7 Cal.Rptr. 109, 354 P.2d 637, 645 (1960).

. I disagree with the Majority that the adoption of Rule 501 means that the Judicial Conference may no longer recommend that federal courts recognize certain privileges. For example, in 2007, the Judicial Conference recommended a new rule about the waiver of a specific privilege, the attorney-client privilege. See Fed.R.Evid. 502 advisory committee notes.

. Patent Office regulations also permit unregistered individuals "to prosecute as attorney or agent” before the Patent Office, in limited circumstances. 37 C.F.R. § 11.9(a),

.Apparently no courts have recognized a privilege for these non-lawyers representing others in immigration' proceedings. See, e.g., United States v. Arango-Chairez, 875 F.Supp. 609, 612 n. 3 (D.Neb.1994); Ann Naffier, Attorney-Client Privilege for Nonlawyers? A Study of Board of Immigration Appeals-Accredited Representatives, Privilege, and Confidentiality, 59 Drake L.Rev. 583, 600 (2011).